**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | Honorable David D. Cleary |
| | ) | |
| Employer's Tax Identification No.: | ) | Hearing Date: August 14, 2024 |
| 20-0200892 | ) | |
| | ) | Hearing Time: 11:00 a.m. |

## NOTICE OF EMERGENCY MOTION

TO: See attached list

PLEASE TAKE NOTICE that on August 14, 2024, at 11:00 a.m., I will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the Evertt McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and present **Debtor's Emergency Motion For Authority To (A) Pay Certain Prepetition Employee Wages, Salaries, And Other Compensation, (B) Pay And Honor Employee Medical And Other Benefits, (C) Continue Employee Benefit Programs; (D) Reimburse Employees For Advancing Costs On Personal Credit Cards; (E) Obtain Related Relief; And (F) For Shortened And Limited Notice Thereof**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is 161 122 6457, and the passcode is Cleary644. The meeting ID and passcode can also be found on the judge's page on the court's web site.

In addition to other grounds for opposing the motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

Berkshire Investments, LLC

By: /s/ Steven R. Jakubowski

Steven R. Jakubowski, #6191960
Robert E. Harig, #6210983
Julia Jensen Smolka, #6272466
Carolina Y. Sales, #6287277
Dominic G. Erbacci, #6329651
Robbins DiMonte, Ltd.
180 North LaSalle Street, Suite 330
Chicago, Illinois 60601
Office: 312-782-900
Fax: 312-782-6690
Emails: sjakubowski@robbinsdimonte.com
         rharig@robbinsdimonte.com
         jsmolka@robbinsdimonte.com
         csales@robbinsdimonte.com
         derbacci@robbinsdimonte.com

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies pursuant to 28 U.S.C. §1746 that by 6:30 p.m. on the 12th day of August 2024, she caused to be served upon the persons list listed below, via the court's CM/ECF system and via electronic mail, a copy **Debtor's Emergency Motion For Authority To (A) Pay Certain Prepetition Employee Wages, Salaries, And Other Compensation, (B) Pay And Honor Employee Medical And Other Benefits, (C) Continue Employee Benefit Programs; (D) Reimburse Employees For Advancing Costs On Personal Credit Cards; (E) Obtain Related Relief; And (F) For Shortened And Limited Notice Thereof** and this notice.

/s/ Jenna Tronina

### Service List

**Via ECF**

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Brian A. Audette
baudette@perkinscoie.com

William J. Factor
wfactor@wfactorlaw.com

**Via 20 Largest Creditors via Email**

AM Industrial Group, LLC
Email: reg.wyman@amindustrialgroup.com

Capital Metals
Email: bhorwitz@bhlfattorneys.com

Carolina Metals Group
Email: Joe.Cerda@carolinametalsgroup.com

Cohen Brothers Inc.
Email: PDober@cohenusa.com
tbenne@cohenusa.com

Combined Metal
Email: ndavy@combinedmetal.com

Constellation New Energy
Anthony.A.Wittrock@constellation.com

Dormakaba
Email: dkap.us.amer@dormakaba.com

Framingham Salvage Co.
Email: Scrapplebaum@gmail.com

Imperial Zinc Corp.
Email: jay@imperialzinc.com

Intrametco
Email: neil@intrmetco.com

JP Wire & Metals
dba Shapiro Recycle
Email: Justin@shapirorecycling.com
Janet@shapirorecycling.com
bkasper@stark-stark.com
Tonder@stark-stark.com
gsmarziani@davismcgrath.com

Metalsco Inc.
Email: linda@metalsco.com

Premier Metal Services LLC
Email: meisner@permiermetalservices.com
dneumann@meyersroman.com
cmackow@premiermetalservices.com

Securitas Security Services USA-Inc
Email: Leonardo.Jimenez@securitasinc.com

Thalheimer
Email: aparks@thalbro.com

Total Metal Recycling (Wieland)
Email: Jessica.Jackson@Wieland.com

Resources Alloys
Email: richard@rmiint.com

WaterSaver Faucet Company
Email: hnguyen@wsflab.com

UB Greensfelder, Hemker, Gale PC
Email: wanaya@greensfelder.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Berkshire Investments LLC, | ) | Case No. 24-11552 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (A) PAY CERTAIN
PREPETITION EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION,
(B) PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, (C)
CONTINUE EMPLOYEE BENEFIT PROGRAMS; (D) REIMBURSE EMPLOYEES
FOR ADVANCING COSTS ON PERSONAL CREDIT CARDS; (E) OBTAIN RELATED
RELIEF; AND (F) FOR SHORTENED AND LIMITED NOTICE THEREOF**

Berkshire Investments LLC, debtor and debtor in possession ("Berkshire" or the "Debtor"),

by and through its undersigned proposed counsel, and pursuant to sections 363, 507, 1107(a), and

1108 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),

hereby moves this Court for authority to (A) pay certain prepetition employee wages, salaries, and

other compensation; (B) pay and honor employee medical and other benefits; (C) continue

employee benefit programs; (D) reimburse employees for advancing costs on personal credit cards;

(E) to obtain related relief; and (F) for shortened and limited notice thereof (the "Motion"). In

support of the Motion, the Debtor respectfully states as follows:

I.    **BACKGROUND**

1.      On August 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case.

Since the Petition Date, the Debtor has remained in possession of its assets and has continued to

operate its business as a debtor in possession in accordance with Sections 1107(a) and 1108 of the

Bankruptcy Code. Neither a trustee nor an official committee of unsecured creditors has been appointed.

2.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O). The statutory predicates for the relief requested herein are sections 363, 507, 1107, and 1108 of the Bankruptcy Code and the applicable Rules are Fed. R. Bankr. P. 6003 and 6004.

3.       The facts supporting this Motion, including the nature of the Debtor's business and the background to this chapter 11 case are set forth in that certain *Declaration of Richard N. Jenkins in Support of Chapter 11 Petitions and First-Day Motions* filed concurrently herewith and incorporated herein by reference (the "Jenkins Declaration"). The following is a summary of key statements from the Jenkins Declaration relevant to this Motion.

4.       The Debtor is a fully integrated brass mill located in Cicero, Illinois. The Debtor's predecessor (Chicago Extruded Metals Company) was founded in 1922 at its current location and grew in size and volume over the years, shipping nearly 3,000,000 pounds of metal product per month at its peak. The Debtor's predecessor filed for bankruptcy in 2003 when margins were small, competitors were many, and working capital was insufficient to sustain operations.

5.       The Debtor currently produces standard and engineered brass and bronze alloys in extruded rod, bar, and other profiles, including a variety of low lead brass, leaded brass, naval brass, aluminum bronze, and silicon bronze alloys. Eighty percent of the Debtor's manufactured products use recycled materials. The Debtor's engineering capabilities and deep metallurgical experience enable it to manufacture these alloys to meet most customer requirements. The Debtor

is the only manufacturer of bronze products in the United States, with its competition being exclusively from imported products.

6.      In 2022, the Debtor became one of the only domestic producers of nickel silver alloys. This extremely durable metal can be extruded by the Debtor into high quality elevator sills. The Debtor has perfected this process of manufacturing these sills after much trial and error over the past several years and is currently capable of producing this higher margin generic and custom designed sills in either bronze or nickel silver and in standard 7, 8, 9 and 10-foot lengths or in any other custom length.

7.      The Debtor was formed in September 2003 by IAT Reinsurance Company ("IAT") for purposes of bidding on the assets of Chicago Extruded Metals Company in a Section 363 sale under the United States Bankruptcy Code. The Debtor was the successful bidder at that sale. IAT retained sole ownership of the Debtor through December 18, 2020, when it sold 100% of its membership interests in the Debtor to CXM Investments LLC ("CXMI"), the current sole member of the Debtor, for $5,000 cash plus an option to purchase 15% of the membership interests in CXMI within the next 10 years for $10,000. At the time of that transfer, IAT forgave $16 million in loan advances to the Debtor plus all interest accrued thereon. CXMI's initial capital contribution into the Debtor totaled $200,000. The purchase option in favor of IAT was never exercised. Patrick Balson, the Debtor's chief executive officer since 2003, and Aaron Mercer, the debtor's plant manager, own 79.5% and 14.5% of CXMI, respectively.

8.      The Debtor currently employs approximately 55 union workers and 25 salaried employees (collectively, the "Employees"). The union workers are members of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

3

International Union Local 7-00717 (the "<u>Union</u>"). The Employees work full-time except for one part-time salaried worker..

## II.    <u>RELIEF REQUESTED</u>

9.      The skills, training, and institutional knowledge of the Employees are essential to the Debtor's ability to administer its business effectively during the chapter 11 case and to maximize the value of its assets. As of the Petition Date, there are amounts accrued and owing under or related to the Debtor's compensation and benefit programs. A large number of the Employees are dependent on receiving their earned compensation and benefits to pay their daily living expenses and provide for their families.

10.     The Employees and their families would be exposed to significant financial harm if the payment of compensation and other benefits were not honored timely and in the ordinary course. Indeed, if their compensation and other benefits were significantly delayed beyond the normal time period for obtaining relief of this type of motion in a chapter 11 case, the Employees may well decide to quit or actively seek another job. If that were to happen, the Debtor would suffer irreparable harm as the loss of these skilled workers, many of whom have been employed by the Debtor for one or more decades, would threaten the viability of this Debtor's plans to sell its operations as a going concern in an orderly sale process under Section 363 of the Bankruptcy Code. (*See* Jenkins Declaration).

11.     Accordingly, to ensure retention of its Employees and maintain their morale, by this Motion, the Debtor requests that the Court enter an order, pursuant to sections 363(b)(1), 507(a)(4), 507(a)(5), 1107(a), and 1108 of the Bankruptcy Code, authorizing, but not directing, the Debtor to pay certain prepetition wage and salary claims of the Employees, to pay and honor

4

all Employee benefits, and to continue Employee benefit programs after the Petition Date, consistent with the Debtor's ordinary course practices before the Petition Date.

12.    In sum, the Debtor's request authority to: (a) pay outstanding wages and salary accruing prior to and including the Petition Date in the estimated total gross amount of approximately $59,030.06, including all related withholdings, taxes and costs incident thereto (collectively, the "Prepetition Wage Claims"); (b) pay other prepetition claims arising in connection with, and otherwise maintain in effect, Employee medical benefits, health and other insurance, accrued prepetition vacation time, reimbursable expenses, and accrued prepetition contributions to Employee benefit plans, as detailed below (the "Employee Benefit Programs," and together with the Prepetition Wage Claims, the "Prepetition Employee Obligations").

### A.    **Employee Wages and Salaries**

13.    The Debtor's workforce comprises a total of approximately 79 Employees, consisting of: (a) approximately 24 full-time salaried Employees and one part time salaried Employee ("Salaried Employees"); (b) approximately 54 full-time union Employees (the "Union Employees"), nearly all of whom regularly work at least forty (40) hours per week. The Union Employees are parties to a collective bargaining agreement. They receive overtime pay at 1.5 times their normal hourly rate after working 40 hours in a week. Their pay is also double if they work over 10 hours in a day or if they work on Sundays, holidays, and are called in to work on a day they were not scheduled to work. Other than Chief Executive Officer, Patrick Balson, and the plant manager, Aaron Mercer, none of the Employees are "insiders" as defined in Section 101(31) of the Bankruptcy Code. Mr. Balson has not received compensation from the Debtor for his services since the fall of 2023.

14.     The Debtor pays its Union Employees weekly on Thursdays, and the salaried Employees are paid bi-weekly on Fridays every two weeks. Most are paid through direct deposit into their bank accounts, but some do receive a payroll check. The aggregate payroll from May through July 2024 averaged approximately $75,000 per pay period for the Salaried Employees. Weekly payroll for Union Employees fluctuates depending on how busy production is and whether there are any maintenance issues that would affect production, but on average the weekly payroll for Union Employees is approximately $67,000.

15.     UKG, Inc. ("UKG") processes the Debtor's payroll and calculating the necessary employer and employee withholdings from the payroll. UKG remits tax withholdings directly to the applicable taxing authorities.

16.     The Debtor's last prepetition payroll paid Union Employees was transferred by the Debtor to UKG on August 7, 2024, and paid by UKG to the employees on the Petition Date. The Salaried Employees were last paid on August 5, 2024. The next scheduled payroll date for the Union Employees is August 15, 2024, representing compensation due for the period from August 5 through and including August 11, 2024. The next scheduled payroll date for the Salaried Employees is August 16, 2024, representing compensation due for the period from August 5, 2024 through and including August 16, 2024. Both these pay periods straddle the Petition Date and includes three prepetition days of service.

17.     The Debtor estimates Prepetition Wage Claims owed Union Employees and Salaried Employees for the period from August 5 through and including August 7, 2024 at approximately $59,030.06. The Debtor estimates Prepetition Wage Claims owed Union Employees for the period August 5 through and including August 7, 2024 at approximately

$36,399.46. The Debtor estimates Prepetition Wage Claims owed Salaried Employees for the period August 5 through and including August 7, 2024 at approximately $22,630.60.

18.     Significantly, no single Employee is owed prepetition wages in excess of the $15,150 priority limit provided under section 507(a)(4) of the Bankruptcy Code. These payments also have been approved the Debtor's proposed postpetition lender and are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit under a postpetition credit facility with its current senior secured lender, NELI International Limited (the "Proposed Postpetition Lender").

19.     Accordingly, the Debtor requests authority to pay all Prepetition Wage Claims in the amounts finally determined under the customary and ordinary methods used by the Debtor prepetition. The Debtor believes that payment of the Prepetition Wage Claims is critical to the retention of its Employees and to the continued postpetition operation of its business as a going concern.

### B.     Social Security, Income Taxes, and Other Withholdings and Deductions

20.     Attendant to the payment of the Debtor's payroll obligations, the Debtor is also obligated to withhold and pay federal, state and local withholding taxes (including Social Security and, Medicare taxes and federal and state unemployment insurance). As part of its payroll processing services, UKG automatically withholds from Employee paychecks the taxes required to be remitted to the applicable taxing authorities.

21.     As part of its request to pay Prepetition Employee Obligations, the Debtor seeks authorization to pay all federal, state, and local withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, all Social Security and Medicare taxes and any

other miscellaneous required withholdings. The Debtor estimates the Debtor's share of prepetition withholding and payroll-related taxes at approximately $4,049.93.

22.    Additionally, the Debtor has been authorized, from time to time, to make certain deductions from Employees' wages, including contributions to various benefit programs (many of which are described below) and wage/child support garnishments. To the extent that any of these are considered property of the Debtor's estate, the Debtor requests permission to make the requisite deductions in the ordinary course to be remit these amounts to the designated recipients, consistent with the Debtor's prepetition ordinary course practice.

### C.    Employee Benefit Programs

23.    The Debtor offers Employees access to health, dental, vision, disability, life, and worker's compensation insurance, along with other benefits, as described below. Certain of these benefits are on account of periods preceding the Petition Date, in whole or in part. None of the proposed payments would result in any covered Employee receiving aggregate wages and benefits for prepetition periods that could exceed the $15,150 priority limit under Bankruptcy Code sections 507(a)(4) and (a)(5) for such claims.

#### 1.    Health Insurance

24.    Full-Time Employees are entitled to enroll in a health insurance plan administered by United Healthcare for themselves, spouses, and dependent children. The cost of coverage is subsidized in large measure by the Debtor, with the Debtor paying approximately 80% of the overall cost for each covered Employee's health insurance and the covered Employee paying the remainder.

25.    The total monthly premium is approximately $80,000 to $100,000, of which the Debtor's share was approximately $64,000 to $80,000. The costs of the Employee health claims,

as well as applicable fees for the administration of the plan, are billed to the Debtor by United Healthcare. Each covered Employee's cost share is covered through payroll deductions. Approximately $178,308.88 is owed United Healthcare on account of prepetition premiums due for the months of July and August 2024. These premium payments are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

### 2.   Dental and Vision

26.     The Debtor offer self-funded dental and vision coverage plans to Full-Time Employees through United Healthcare and EyeMed, respectively. These are voluntary programs and the covered Employees participating in these programs are solely responsible for payment of the premiums. The Debtor withholds required premium amounts through payroll deductions. Approximately $6,063.20 is owed to United Healthcare on account of prepetition premiums due for dental coverage for the months of July and August 2024.

27.     Approximately $1,321.52 is owed to EyeMed on account of prepetition premiums due for vision care that have been deducted from the prepetition wages of covered Employees for the months of July and August 2024. These premium payments are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

### 3.   Term Life Insurance, Accidental Death and Dismemberment and Long-Term Disability

28.     The Debtor provides term-life, voluntary life, accidental death and dismemberment ("AD&D"), and long-term disability coverage to all eligible Full-Time Employees through Mutual of Omaha. The policy premium for the AD&D benefit is $1,500 per month and the premium for long-term disability coverage is $400.00 per month. The voluntary life and AD&D insurance

coverage is a combined $1,000 per month. Approximately $4,904.17 is owed to Mutual of Omaha on account of prepetition coverage premiums due for the months of July and August 2024 that have been deducted from the prepetition wages of covered Employees. These premium payments are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

### 4. **Paid Time Off**

29.     In addition to wages and salaries, the Debtor provides regular full-time Employees with paid time off ("PTO") for holidays, vacations, and other personal days off. Union Employees with 6 months to 2 years of service get one week of vacation time annually. Union Employees with 3 years to 10 years of service get two weeks' vacation time annually, Union Employees with 11 years to 20 years of service get three weeks' vacation time annually. Union Employees with 20 years or more of service get four weeks of vacation time annually. In addition to PTO, all of the Debtor's Employees are allowed to earn up to five (5) days of leave from work each year under Illinois law.

30.     Salaried Employees less than six months service earn 1 day of vacation annually for each month of service. Salaried Employees with 6 months to 2 years of service earn one week of vacation annually. Salaried Employees with 2 years to 10 years of service earn two weeks of vacation annually. Salaried Employees with 10 years or more of service earn four weeks of vacation annually.

31.     As of the Petition Date, the Debtor's Employees have accrued an aggregate unpaid PTO in the approximate amount of $98,517.19. The Debtor seeks authority to honor all accrued PTO in the ordinary course as requested by the Debtor's Employees.

### 5.  <u>Union Dues</u>

32.      The Debtor is obligated under its collective bargaining agreement with the Union to deduct monthly dues owed by Union Employees to the Union. Amounts deducted from the prepetition wages of Union Employees but not remitted to the Union total $19,450.22. This payment is accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

### 6.  <u>Reimbursable Business Expenses</u>

33.      The Debtor reimburses certain Employees for reasonable business expenses incurred in the performance of their respective duties, such as mileage, parking and tolls, airfare, lodging, and meal expenses while performing company business. The Debtor requests authority to reimburse all unpaid business expenses incurred by its Employees prior to the Petition Date, which is a nominal amount as of the Petition Date.

34.      In addition, Richard Jenkins, the Debtor's Chief Financial Officer, has personally guaranteed an aggregate of $42,293.12 for business expenses paid through one of the Debtor's American Express Business Cards. These purchases were for office supplies, breakroom supplies, parts for equipment, gas, parking, and business meals.

35.      Similarly, Patrick Balson, the Debtor's Chief Executive Officer, has charged an aggregate of approximately $21,500 for business expenses paid through one of his personal credit cards.

36.      The payments to American Express for these prepetition business expenses incurred are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

F.      **401(k) Plan**

37.     Employees are entitled to contribute to a 401(k) plan sponsored by the Debtor, a safe harbor plan into which such Employees may contribute pretax earnings for retirement savings. The Debtor does also contribute to Employees' 401(k) accounts. The Debtor has deducted $32,415.73 from the Employees' pay for approximately six weeks prepetition that had not yet been forwarded to the 401(k) plan. The Debtor's matching contribution for this period is $21,901.22.

38.     The Debtor is investigating whether to continue, alter, or terminate the 401(k) plan, but in the meantime requests authority to make the requisite deposits of these prepetition deductions into the covered Employees' 401(k) plans. These payments are accounted for and authorized in the Debtor's "DIP Budget" that is attached to the Debtor's motion seeking authority to obtain credit from the Proposed Postpetition Lender.

III.    **AUTHORITY FOR THE RELIEF REQUESTED**

39.     Ample authority exists to pay prepetition Employee obligations where doing so will benefit a debtor's estate. The benefit of paying the Prepetition Employee Obligations can be measured against the adverse impact to the Debtor's estate if the Employees do not remain in the Debtor's employ.

40.     Authority to pay Prepetition Employee Obligations is found in sections 1107(a) and 1108 of the Bankruptcy Code, which vest debtors in possession with authority to continue operating their businesses. Sometimes this authority and the concomitant duty to maximize estate value may be fulfilled only through the pre-plan payment of certain unsecured claims. *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); (authorizing debtors in possession to exercise business judgment to pay critical prepetition claims); *cf. In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill.

2009) (a debtor in possession "has the discretionary authority to exercise [its] business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

41.    Additionally, the Court may authorize payment of the Prepetition Employee Obligations under section 363(b)(1) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). This section provides that a debtor in possession may "use . . . other than in the ordinary course of business, property of the estate." A debtor's business judgment as to the use, sale, or lease of estate property is appropriate if supported by "sound business reasons." *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991).

42.    In *In re Kmart Corp.*, the Seventh Circuit Court of Appeals suggested that section 363(b)(1) of the Bankruptcy Code is an appropriate mechanism for payment of certain necessary or critical prepetition debts if such payments will ultimately benefit all creditors. *In re Kmart Corp.*, 359 F.3d 866, 874 (7th Cir. 2004). The United States Supreme Court favorably cited *Kmart*'s analysis regarding the payment of "critical vendor" claims early in a chapter 11 case. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468, 137 S. Ct. 973, 985 (2017) (noting that courts have approved critical vendor payments where "the distributions at issue would 'enable a successful reorganization and make even the disfavored creditors better off' ").

43.    Paying the Prepetition Employee Obligations is supported by sound business reasons. The Debtor's entire existence is dependent on its employees continued to come to work every date. Missed payroll or failure to make other promised prepetition benefits available would likely induce significant numbers of the Debtor's Employees to have enough concerns about the viability of the Debtor—notwithstanding the existing of a stalking horse bid to purchase the Debtor during this chapter 11 case—to seek more stable work elsewhere. All the Debtor's Employees are

skilled and familiar with the Debtor's operations. The Debtor believes it would be exceedingly difficult to replace any of its Employees at this critical juncture, and to have to do so would be a great distraction to management and the Debtor's overburdened human relations department and further significantly and adversely affect Employee morale, potentially spiraling into a deluge of resignations.

44.     The primary objective of the Debtor and the Proposed Postpetition Lender in this case is to close on a sale of substantially all the Debtor's assets while simultaneously preserving the jobs of approximately 79 full-time Employees. The Debtor's management believes that failing to honor the Prepetition Employee Obligations would jeopardize this objective and cause the Debtor irreparable harm.

45.     In addition to having "sound business reasons" under Bankruptcy Code section 363 to honor the Prepetition Employee Obligations, payment of these obligations also satisfies the more specific "benefit to all creditors" standard articulated in *Kmart* because it will enable the Debtor to maintain its normal operations, with the strong support of its Proposed Postpetition Lender, and give the Debtor the best chance of maximizing the going concern value of its assets for the benefit of the estate and all its constituents.

46.     As noted in *Kmart*, "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Kmart*, 359 F.3d. at 872. Here, authorizing payment of the Prepetition Employee Obligations will assure that minimal damage to the Union and Salaried Employees who have recognized priorities under the Bankruptcy Code over general unsecured creditors and thereby will be assured these priorities are timely discharged in the ordinary course with the consent of the Debtor's main secured creditors.

47.     Section 507(a)(4) and (5) of the Bankruptcy Code requires that certain claims for prepetition wages, salaries, vacation, sick leave, and employee benefit plan contributions be accorded a priority in payment, up to $15,150 per employee. 11 U.S.C. § 507(a)(4) and (a)(5). By this Motion, the Debtor does not seek to pay any single Employee more than the $15,150 limit. The relief sought herein, therefore, does not "rearrange priorities among creditors" in any meaningful way. *Kmart*, 359 F.3d at 872.

48.     Courts in this jurisdiction regularly authorize chapter 11 debtors in possession to pay prepetition employee wages and benefits in instances where employee retention is critical to the success of their bankruptcy cases. *See, e.g.*, *In re Oberweis Dairies, Inc.*, No. 24-5385 (Bankr. N.D. Ill April 18, 2024) (Dkt. No. 38); *In re St. Margaret's Health – Peru, et al.*, No. 23-11641 (Bankr. N.D. Ill. Sep. 13, 2023) (Dkt. No. 40); *In re Caesars Entm't Operating Co.*, No. 15-01145 (Bankr. N.D. Ill. Mar. 6, 2015) (Dkt. No. 617); and *In re SGK Ventures, LLC*, No. 13-37603 (Bankr. N.D. Ill. Sept. 26, 2013) (Dkt. No. 26).

49.     For the foregoing reasons, the Debtor respectfully requests that it be granted authority to pay the Prepetition Employee Obligations, if and when they are due and owing, after the Petition Date, consistent with the Debtor's prepetition practices.

## IV.    SATISFACTION OF BANKRUPTCY RULE 6003

50.     Rule 6003 authorizes a court to grant relief in the first 21 days after the filing of a bankruptcy petition "to the extent that relief is necessary to avoid immediate and irreparable harm." As discussed above, failure to pay the Prepetition Employee Obligations timely would likely jeopardize the success of this chapter 11 case. Accordingly, to the extent Bankruptcy Rule 6003 applies to the relief granted herein, its requirements are satisfied under the facts presented.

## V.   WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

51.     Because the Debtor and its estate would likely suffer immediate and irreparable harm if the Prepetition Employee Obligations are not timely honored, the Debtor requests that the notice provisions of Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h) be excused to the extent they are applicable to the relief sought herein.

## VI.   PERMISSION TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

52.     The Debtor currently maintains funds sufficient to pay all Prepetition Employee Obligations as they come due in the ordinary course. The Debtor requests that the Court authorize and direct all applicable financial institutions to process, honor, and pay any and all checks or wire transfer requests, as may be requested by the Debtor to effectuate payment of the Prepetition Employee Obligations, including (but not limited to) checks issued and wire transfers initiated prior to the Petition Date on account of Prepetition Employee Obligations.

## VII.   NOTICE

53.     Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the 20 largest unsecured creditors pursuant to Fed. R. Bankr. P. 1007(d); (c) counsel to the Debtor's primary secured lender; and (d) all other parties who have requested notice and service of pleadings via the Court's CM/ECF system in this chapter 11 case.

54.     Rule 2002(a)(2) provides that, "unless the court for cause shown shortens the time or directs another method of giving notice," a motion seeking to use property of the estate other than in the ordinary course of business must be served upon "the debtor, the trustee, all creditors and indenture trustees" on 21 days' notice. Fed. R. Bankr. P. 2002(a)(2).

55.     Similarly, Local Rule 9013-1 requires that a "notice of motion served personally must be served no later than 4:00 p.m. on the third day before the date of presentment." L.R. 9013-1(D)(2). Under Rule 2002(m), however, both of these requirements may be modified at the Court's discretion. Fed. R. Bankr. P. 2002(m) (authorizing the Court to "enter orders designating the manners in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules").

56.     As discussed above, if the Debtor were required to follow these notice requirements, the relief requested would be significantly delayed, to the significant detriment to the Employees and ultimately the Debtor and its estate. Given the critical and time-sensitive nature of the relief requested, the Debtor submits that "cause" exists to shorten and limit the notice requirements applicable to the Motion and to deem the notice period and the notices served as set forth above and in the Debtor's certificate of service adequate and sufficient under the circumstances of this case.

WHEREFORE, Berkshire Investments LLC, debtor and debtor in possession herein, respectfully requests entry of the proposed form of order granting the relief requested herein and for as is just and appropriate.

Dated:  August 12, 2024

Respectfully Submitted,

BERKSHIRE INVESTMENTS LLC

By: /s/ Steven R. Jakubowski
    One of Its Proposed Attorneys

Steven R. Jakubowski (ARDC #6191960)
Carolina Y. Sales (ARDC #6287277)
Julia E. Smolka (ARDC #6272466)
ROBBINS DIMONTE, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
Tel: 312-456-0191
Fax: 312-782-6690
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com
jsmolka@robbinsdimonte.com

*Proposed Counsel to the Debtor in Possession*