# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | Honorable David D. Cleary |
| | ) | |
| Employer's Tax Identification No.: 20-0200892 | ) ) | Hearing Date: August 14, 2024 |
| | ) | Hearing Time: 11:00 a.m. |

## NOTICE OF EMERGENCY MOTION

TO: See attached list

    PLEASE TAKE NOTICE that on August 14, 2024 at 10:00 a.m., I will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the Evertt McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and present **Debtor's Emergency Motion For Order: (I) Authorizing (A) Secured Post-Petition Financing On A Super Priority Basis Pursuant To 11 U.S.C. § 364, (B) Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (C) Grant Of Adequate Protection Pursuant To 11 U.S.C. §§ 363 And 364; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(C); And (III) Shortened And Limited Notice Thereof**, a copy of which is attached.

    **Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

    **To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

    **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

    **Meeting ID and passcode**. The meeting ID for this hearing is 161 122 6457, and the passcode is Cleary644. The meeting ID and passcode can also be found on the judge's page on the court's web site.

    In addition to other grounds for opposing the motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

        Berkshire Investments, LLC

        By: /s/ Steven R. Jakubowski

Steven R. Jakubowski, #6191960
Robert E. Harig, #6210983
Julia Jensen Smolka, #6272466
Carolina Y. Sales, #6287277
Dominic G. Erbacci, #6329651
Robbins DiMonte, Ltd.
180 North LaSalle Street, Suite 330
Chicago, Illinois 60601
Office: 312-782-900
Fax: 312-782-6690
Emails: sjakubowski@robbinsdimonte.com
       rharig@robbinsdimonte.com
       jsmolka@robbinsdimonte.com
       csales@robbinsdimonte.com
       derbacci@robbinsdimonte.com

# CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies pursuant to 28 U.S.C. §1746 that by 6:30 p.m. on the 12th day of August 2024, she caused to be served upon the persons list listed below, via the court's CM/ECF system and via electronic mail, a copy **Debtor's Emergency Motion For Order: (I) Authorizing (A) Secured Post-Petition Financing On A Super Priority Basis Pursuant To 11 U.S.C. § 364, (B) Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (C) Grant Of Adequate Protection Pursuant To 11 U.S.C. §§ 363 And 364; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(C); And (III) Shortened And Limited Notice Thereof**, and this notice.

/s/ Jenna Tronina

**Service List**

**Via ECF**

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Brian A. Audette
baudette@perkinscoie.com

William J. Factor
wfactor@wfactorlaw.com

**Via 20 Largest Creditors via Email**

AM Industrial Group, LLC
Email: reg.wyman@amindustrialgroup.com

Capital Metals
Email: bhorwitz@bhlfattorneys.com

Carolina Metals Group
Email: Joe.Cerda@carolinametalsgroup.com

Cohen Brothers Inc.
Email: PDober@cohenusa.com
           tbenne@cohenusa.com

Combined Metal
Email: ndavy@combinedmetal.com

Constellation New Energy
Anthony.A.Wittrock@constellation.com

Dormakaba
Email: dkap.us.amer@dormakaba.com

Framingham Salvage Co.
Email: Scrapplebaum@gmail.com

Imperial Zinc Corp.
Email: jay@imperialzinc.com

Intrametco
Email: neil@intrmetco.com

JP Wire & Metals
dba Shapiro Recycle
Email: Justin@shapirorecycling.com
           Janet@shapirorecycling.com
           bkasper@stark-stark.com
           Tonder@stark-stark.com
           gsmarziani@davismcgrath.com

Metalsco Inc.
Email: linda@metalsco.com

Premier Metal Services LLC
Email: meisner@permiermetalservices.com
dneumann@meyersroman.com
cmackow@premiermetalservices.com

Resources Alloys
Email: richard@rmiint.com

Securitas Security Services USA-Inc
Email: Leonardo.Jimenez@securitasinc.com

UB Greensfelder, Hemker, Gale PC
Email: wanaya@greensfelder.com

Total Metal Recycling (Wieland)
Email: Jessica.Jackson@Wieland.com

WaterSaver Faucet Company
Email: hnguyen@wsflab.com

Thalheimer
Email: aparks@thalbro.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Berkshire Investments LLC, | ) | Case No. 24-11552 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| | ) | |

**EMERGENCY MOTION FOR ORDER (I) AUTHORIZING (A) SECURED POSTPETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364; (II) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(C); AND (III) PERMITTING SHORTENED AND LIMITED NOTICE**

Berkshire Investments LLC, an Illinois corporation ("Berkshire" or the "Debtor"), by and through its undersigned proposed counsel, hereby moves (the "Motion") for the entry of orders pursuant to Sections 105, 361, 363, 364, 506 and 507 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Fed. R. Bankr. P. 2002, 4001, and 9014 (1) authorizing the Debtor to incur post-petition secured financing (the "Post-Petition Financing") under that certain "Secured Super-Priority Post-Petition Credit Agreement" (the "DIP Credit Agreement") on an interim and final basis from NELI International Incorporated, a corporation formed under the laws of the Province of Ontario, Canada ("NELI" or the "Lender"); (2) authorizing the Debtor to use cash collateral; (3) granting adequate protection; (4) setting a final hearing on the Motion to consider the entry of a final order; and (5) shortening and limiting notice of the Motion. In support of the Motion, the Debtor respectfully states as follows:[1]

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the DIP Credit Agreement.

## I. STATEMENT PERTAINING TO FED. R. BANKR. P. 4001 DISCLOSURES

This Motion seeks authority for the Debtor to obtain interim and final post-petition asset-based financing in the aggregate principal amount not to exceed $3,500,000 and on the terms and conditions set forth in the DIP Credit Agreement. The Post-Petition Financing will bear interest at an annual non-default rate equal to the Prime Rate in effect from time to time plus 1.75% per annum, accruing daily and payable monthly. The Obligations owed the Lender under the DIP Credit Agreement will be secured by liens on substantially all the assets of the Debtor. These liens will be senior to the pre-existing liens in favor of (i) the Lender under its prepetition credit facility with the Debtor and (ii) Tramec Sloan LLC, an affiliate of the contemplated stalking horse bidder, whose liens are junior to those of the Lender. In addition, the Motion seeks authority to allow the Debtor to use cash collateral and provide adequate protection to the Lender on account of its prepetition senior secured liens on substantially all the Debtor's assets.

For ease of reference, the specific disclosures required for this Motion by Fed. R. Bankr. P. 4001(c)(1)(B) and Bankr. N.D. Ill. L.R. 4001 are set forth in Section IV below.

## II. FACTUAL BACKGROUND

1. On August 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "Chapter 11 Case"). Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as a Debtor in possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O). The Debtor consents to the entry of a final order or judgment by the Court with respect to this Motion in the event it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are Sections 105, 361, 363, 364, 506 and 507 of the Bankruptcy Code.

A. **Background to the Debtor and Its Operations**

4. The facts supporting this Motion, including the nature of the Debtor's business and the background to this chapter 11 case are set forth in that certain *Declaration of Richard N. Jenkins in Support of Chapter 11 Petitions and First-Day Motions* filed concurrently herewith and incorporated herein by reference (the "Jenkins Declaration"). The following is a summary of key statements from the Jenkins Declaration relevant to this Motion.

5. The Debtor is a fully integrated brass mill located in Cicero, Illinois. The Debtor's predecessor (Chicago Extruded Metals Company) was founded in 1922 at its current location and grew in size and volume over the years, shipping nearly 3,000,000 pounds of metal product per month at its peak. The Debtor's predecessor filed for bankruptcy in 2003 when margins were small, competitors were many, and working capital was insufficient to sustain operations.

6. The Debtor currently produces standard and engineered brass and bronze alloys in extruded rod, bar, and other profiles, including a variety of low lead brass, leaded brass, naval brass, aluminum bronze, and silicon bronze alloys. Eighty percent of the Debtor's manufactured products use recycled materials. The Debtor's engineering capabilities and deep metallurgical experience enable it to manufacture these alloys to meet most customer requirements.

7. In 2022, the Debtor became one of the only domestic producers of nickel silver alloys. This extremely durable metal can be extruded by the Debtor into high quality elevator sills. The Debtor has perfected this process of manufacturing these sills after much trial and error over the past several years and is currently capable of producing this higher margin generic and custom designed product in either bronze or nickel silver and in standard 7, 8, 9 and 10-foot lengths or in any other custom length.

8. The Debtor was formed in September 2003 by IAT Reinsurance Company ("IAT") for purposes of bidding on the assets of Chicago Extruded Metals Company in a Section 363 sale under the United States Bankruptcy Code. The Debtor was the successful bidder at that sale. IAT retained sole ownership of the Debtor through December 18, 2020, when it sold 100% of its membership interests in the Debtor to CXM Investments LLC ("CXMI"), the current sole member of the Debtor, for $5,000 cash plus an option to purchase 15% of the membership interests in CXMI within the next 10 years for $10,000. At the time of that transfer, IAT forgave $16 million in loan advances to the Debtor plus all interest accrued thereon. CXMI's initial capital contribution into the Debtor totaled $200,000. The purchase option in favor of IAT was never exercised.

9. The Debtor is the only manufacturer of bronze products in the United States, with its competition being exclusively from imported products. The Debtor currently employs approximately 55 union workers and 25 salaried employees. The union workers are members of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union Local 7-00717.

10. The Debtor's Chief Executive Officer is Patrick Balson, who has served in that role since the Debtor's formation in 2003. Mr. Balson controls 79.5% of CXMI and is the sole manager of both the Debtor and CXMI.

`                                          4

B.    **Financing Prior to the Chapter 11 Case**

5.    On February 17, 2021, the Debtor entered into a "Loan and Security Agreement" (the "Prepetition NELI LSA") with the Lender. The Prepetition NELI LSA was amended seven times through November 16, 2023. The seventh amendment includes a forbearance agreement on account of the Debtor's material defaults under the Prepetition NELI LSA. The forbearance agreement was further twice extended through March 31, 2024 and has expired by its terms.

6.    The Debtor's primary tangible assets as of the filing date are approximately $550,000 of accounts receivable and $2.2 million of inventory. The net book value of the Debtor's machinery and equipment is $3.6 million.

7.    In addition to the approximately $2.1 million due under the Neli LSA, the Debtor owes $1,752,339.50 million to Tramec, LLC the Stalking Horse Bidder (defined below) on account of unfulfilled purchase orders that were paid in advance since December 2023. These advances are subject to a perfected security interest in favor of the Stalking Horse Bidder. The advances by the Stalking Horse Bidder. The Debtor owes approximately $9 million to holders of unsecured claims.

8.    The Debtor's shortage of working capital and significant past due balances owed vendors has resulted in vendor product being supplied to the Debtor only if paid cash in advance. Currently, the Debtor lacks sufficient working capital availability to purchase the necessary raw materials needed to reach a breakeven sales level of approximately $3 million per month.

C.    **Need for Post-Petition Financing**

9.    The Debtor requires immediate access to Post-Petition Financing and use of cash collateral, as that term is defined under Section 363 of the Bankruptcy Code ("Cash Collateral") pursuant to Section 364 of the Bankruptcy Code and Fed. R. Bankr. P. 4001. In the absence of this immediate access, the Debtor will be unable to continue operating its business, causing immediate

and irreparable loss or damage to the Debtor's estate, to the detriment of the Debtor, its creditors, and other parties in interest. The Debtor does not have sufficient unrestricted cash and other financing available to operate its business, maintain the estate's property, and administer the Chapter 11 Case with a view toward a going-concern sale of substantially all of the Debtor's assets, absent the relief provided in this Motion.

10. The use of Cash Collateral alone would be insufficient to meet the Debtor's post-petition operating needs. Due to the Debtor's overall precarious financial position, the Debtor is unable to obtain (1) adequate unsecured credit allowable under Sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code as an ordinary administrative expense, (2) unsecured credit allowable under Section 364(a) or (b) of the Bankruptcy Code, (3) unsecured credit entitled to priority under Section 364(c)(1) of the Bankruptcy Code, or (4) adequate secured credit under Section 364(c)(2), (c)(3) or (d)(1), from any source other than the Lender that would be sufficient to enable the Debtor to continue its business operations. The only feasible source of secured credit available to the Debtor is the Post-Petition Financing. The Debtor requires the Post-Petition Financing to satisfy its immediate critical post-petition liquidity needs.

### III. RELIEF REQUESTED

#### A. Interim Post-Petition Financing

11. By this Motion, the Debtor requests the entry of an interim order substantially in the proposed form attached hereto (the "Interim Order"), approving the agreement of the Lender to advance post-petition funds to the Debtor in an amount not to exceed $3,500,000 (the "Interim Post-Petition Financing"). The Interim Post-Petition Financing would be governed by: (a) that certain *Secured Super-Priority Post-Petition Credit Agreement* between the Debtor and the Lender

` 6

(the "DIP Credit Agreement") attached hereto as **Exhibit A** to the Interim Order and incorporated herein by reference; and (b) the Interim Order.[2]

12. The Debtor requests authority to use the Interim Post-Petition Financing and/or any Cash Collateral pursuant to the budget (the "Initial Budget") attached hereto as **Exhibit B** to the Interim Order and incorporated herein by reference, from the date of the Interim Order through the date of the entry of a Final Order (as hereafter defined), as more fully set forth in the Interim Order (the "Interim Period").

    **B.**    **Post-Petition Financing Beyond the Interim Period**

13. The Debtor further requests the entry of a final financing order (the "Final Order") in form and substance acceptable to the Debtor and the Lender, authorizing continued Post-Petition Financing through at least the week ending November 4, 2024, to be considered at a final hearing to be scheduled by the Court.

    **C.**    **Budget for Post-Petition Financing**

14. The Initial Budget sets forth all projected cash receipts, sales, and cash disbursements (by line item) on a weekly basis for the time period from the Petition Date through and including the date this Court enters the Final Order. The Initial Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Debtor agree in its respective discretion (the "Supplemental Approved Budgets").

---

[2] The Interim Order provides that in the event of any inconsistency between the DIP Credit Agreement and the Interim Order, the Interim Order will control.

` 7

### D. Negotiations in Good Faith

15. Prior to the filing of the Motion, the Lender and the Debtor conducted lengthy, good-faith negotiations with respect to the terms and conditions of the DIP Credit Agreement, the Interim Order, and the Initial Budget.

### E. Final Hearing

16. The Debtor further requests that the Court set a final hearing on the Motion pursuant to Fed. R. Bankr. P. 4001(c)(2), to consider the entry of the Final Order.

## IV. FED. R. BANKR. P. 4001(c)(1)(B) AND BANKR. N.D. ILL. L.R. 4001-2 DISCLOSURES[3]

8. The following disclosures are made pursuant to Fed. R. Bankr. P. 4001(c)(1)(B) with respect to the terms of the Post-Petition Financing and/or the impact of the relief sought by this Motion:

    a. <u>Material Repayment Terms of Post-Petition Financing</u>. The aggregate Post-Petition Financing under the DIP Credit Agreement shall at no time exceed the lesser of (1) $3,500,000 or (2) the sum of (w) the principal amount owing under this Agreement, <u>plus</u> (x) all postpetition interest and fees paid under this Agreement, <u>plus</u> (y) all interest and fees paid to Lender as adequate protection payments under the Interim Financing Order and the Final Financing Order, <u>plus</u> (z) the difference, if positive, when (i) the Prepetition Revolver Balance plus the principal amount owing under this Agreement is subtracted from (ii) the Borrowing Base. (DIP Credit Agreement, ¶ 1.1.1.A.1, Credit Limit). The Post-Petition Financing will bear interest at the Prime Rate in effect from time to time plus 1.75% per annum, accruing daily and payable monthly, *provided* that during the existence of any default under the Post-Petition Financing that such interest shall be increased by an additional four percent (4%). (DIP Credit Agreement, ¶ 1.4). The Lender may terminate the Post-Petition Financing as a result of certain enumerated "Events of Default" stated in the DIP Credit Agreement and the Interim Order, subject to notice and cure rights and the right to challenge whether a default occurred. (DIP Credit Agreement, ¶¶ 6, 7; Interim Order ¶¶ 6, 11(b)). The Post-Petition Financing shall be repaid through all cash receipts and the net proceeds of Section 363 sales being conducted in the Chapter 11 Case before repayment of any of

---

[3] References herein to the terms of the Post-Petition Financing, the DIP Credit Agreement or the Interim Order are merely a summary, and to the extent of any conflict between the summaries contained herein and the DIP Credit Agreement or the Interim Order, those latter documents shall control.

` 8

the Pre-Petition Obligations but subject to the prior payment or funding of the "Carve-Out" and "Approved Budget Expenses" (as defined below). (Interim Order ¶¶ 13, 15). In consideration of the Post-Petition Financing, the Lender shall receive a commitment fee of $70,000.00, payable upon termination of the Post-Petition Financing. (DIP Credit Agreement, ¶ 1.5; Interim Order ¶ 5).

      b.      <u>Grant of Priority or Liens under § 364 for Post-Petition Financing</u>. Upon entry of the Final Order, the Lender will receive post-petition priming liens and security interests (the "<u>DIP Liens</u>") on substantially all of the assets and properties of the Debtor, to secure the Post-Petition Financing (collectively, the "<u>DIP Collateral</u>"). (DIP Credit Agreement, ¶ 8; Interim Order ¶ 7). Under the DIP Credit Agreement and the Interim Order, the DIP Liens exclude avoidance actions arising under chapter 5 of the Bankruptcy Code or the proceeds thereof (the "<u>Avoidance Actions</u>"). *Id*. The DIP Liens are subject to the Carve-Out (defined below), and the Approved Budget Expenses. (Interim Order ¶ 13(a)). Upon entry of the Final Order, all obligations under the Post-Petition Financing shall also constitute allowed super-priority claims under Section 364(c)(1) of the Bankruptcy Code (the "<u>Superpriority Claim</u>"). Under the Interim Order, any Superpriority Claim shall not be payable from Avoidance Actions. Interim Order ¶ 7(b). The Superpriority Claim shall be subordinate to the following (the collectively: (i) the carve-out for fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), fees payable to the Clerk of the Bankruptcy Court, and professional fees (the "<u>Carve-Out</u>") (Interim Order ¶¶ 7(b), 13(a)); and (ii) the carve-out for all other expenses under the approved budget(s) (the "<u>Approved Budget Expenses</u>") (Interim Order ¶¶ 7(b), 15).

      c.      <u>Adequate Protection</u>. As adequate protection for the Lender's consent to the use of Cash Collateral, the Pre-Petition Obligations shall bear interest at an annual rate equal to the WSJ Prime Rate in effect from time to time plus 1.75% per annum, accruing daily and payable monthly, and the Lender is granted valid, binding, continuing, enforceable, fully perfected, first-priority replacement liens on and a senior security interest in and to all of the DIP Collateral, subject only to the Carve-Out, the Approved Budget Expenses and the DIP Liens, for any diminution in the value of the Lender's interest in the Pre-Petition Collateral resulting from the sale, lease, or use of the Pre-Petition Collateral from and after the Petition Date, other than the priming of the Pre-Petition Collateral by the DIP Collateral. (Interim Order ¶ 8).

      d.      <u>Validity of Pre-Petition Obligations and Pre-Petition Collateral</u>. The Debtor stipulates to the validity of the Pre-Petition Obligations, to the validity of the Pre-Petition Loan Documents and to the validity and first priority of the liens in the Pre-Petition Collateral to secure the Pre-Petition Obligations. (Interim Order, Recital C(i-ii)).

      e.      <u>Automatic Stay Modification</u>. The Interim Order provides for the modification of the automatic stay upon the Post-Petition Termination Date but subject to notice and cure rights and the right to challenge the occurrence of a post-petition default. (Interim Order ¶¶ 6, 11(b)).

`           9

  f. <u>No Plan of Reorganization Deadlines</u>. The Interim Order does not seek relief to establish deadlines for filing a plan or disclosure statement.

  g. <u>Certain Waivers in Interim Order</u>. The Interim Order waives certain perfection requirements that may exist under applicable non-bankruptcy law pertaining to the priority, perfection and/or validity of the DIP Liens and the Adequate Protection Liens. (Interim Order ¶ 9).

  h. <u>Deadlines to Challenge Pre-Petition Obligations or Liens</u>. The ability to challenge the validity, perfection and amount of the liens or claims of the Lender or to otherwise assert any claims against such parties shall be forever discharged and released if such challenge within 60 days of the later of the Petition Date or such later date as has been ordered by the Court upon a finding of exceptional circumstances warranting n extension beyond 60 days. (Interim Order ¶ 25).

  i. <u>Indemnification of Lender</u>. The Interim Order does not include any indemnification provisions.

  j. <u>No § 506(c) Waiver</u>.  The Interim Order does not include a waiver of any rights under 11 U.S.C. § 506(c) with respect to the Pre-Petition Obligations, the DIP Obligations, or the Collateral.

  k. <u>No Liens on Avoidance Actions</u>.  The Interim Order excludes any liens on or recovery on any Superiority Claim from Avoidance Actions or any proceeds thereof. (Interim Order ¶ 7).

  9. To the extent not otherwise already disclosed herein, the following are additional disclosures required by Bankr. N.D. Ill. L.R. 4001-2(A)(2) of certain terms to be contained subject to further negotiation in the Interim Order or the DIP Credit Agreement:

  a. <u>Cross-Collateralization</u>. Other than with respect to the adequate protection described above, the Pre-Petition Obligations are not secured by the DIP Collateral.

  b. <u>Roll-Up</u>.  All proceeds of Pre-Petition Collateral will be used to pay, in order: (i) payment of any DIP Obligations; and (ii) payment of any Pre-Petition Obligations. The Interim Order does not deem the Pre-Petition Obligations to be Post-Petition debt or use the Post-Petition Financing to pay part or all of the Pre-Petition Obligations, other than as provided in 11 U.S.C. § 552(b). (Interim Order ¶¶ 15, 17).

  c. <u>Carve-Out Limitations</u>. The Interim Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out, except that no portion of the Carve-Out, the Obligations, Cash Collateral, Pre-Petition Collateral or DIP Collateral, may be used to contest in any

`  10

manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Obligations or Post-Petition Obligations or the liens securing the Pre-Petition Obligations or Post-Petition Obligations, or to prosecute or assert any claims or causes of action against the Lender. (Interim Order ¶ 13(b)).

      d.    <u>Non-Consensual Priming Lien</u>s. The Interim Order does not prime any secured liens to the extent that such liens are senior to the Pre-Petition Liens under applicable law as of the Petition Date. (Interim Order ¶ 7).

      e.    <u>No Lender Liability Declaration</u>. The Interim Order contains a declaration that the Post-Petition Financing shall not create liability of the Lender to any third parties as a joint venturer with the Debtor. (Interim Order ¶ 24).

      f.    <u>Sale Milestones</u>. The DIP Credit Agreement contains certain milestones in the Chapter 11 Case related to the sale of substantially all of the Debtor's assets as a going concern. The failure to achieve the milestone constitutes a default under the Post-Petition Financing which is subject to an automatic five business day cure period. (DIP Credit Agreement, ¶ 4.10; Interim Order ¶ 6(xiv)).

10.    Pursuant to Local Bankruptcy Rule 4001-(2)(A)(3) and (A)(4), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Interim Order:

      a.    <u>Use of Post-Petition Financing and the Budget</u>. The proceeds of the Post-Petition Financing shall be used exclusively for the expenditures set forth in the Initial Budget attached to the Interim Order as Exhibit B. (DIP Credit Agreement, ¶ 5.6; Interim Order ¶ 15). Under the DIP Credit Agreement, the Initial Budget will be subject to a Permitted Variance. (DIP Credit Agreement, ¶ 5.7; Interim Order ¶ 15).

      b.    <u>Release</u>. The Interim Order provides that, conditioned upon entry of a Final Order and subject to the Challenge Period under ¶ 25(a) thereof, the Debtor and its estate release the Lender from all claims and actions relating to Pre-Petition Obligations and the Pre-Petition Loan Documents. (Interim Order ¶ 23).

## V.    **APPLICABLE AUTHORITY AND JUSTIFICATION FOR RELIEF REQUESTED**

11.    If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, then the court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt:

`    11

>(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
>(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

12. Further, if a debtor is unable to obtain credit otherwise, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien." 11 U.S.C. § 364(d).

13. Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

>The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c). Accordingly, the Court is authorized to grant the relief requested herein.

14. The terms and provisions of the Post-Petition Financing have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the Post-Petition Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the needed post-petition financing.

15. As described in the Jenkins Declaration, the Debtor, having determined that financing was available only under Section 364(c) and (d) of the Bankruptcy Code from the Lender, negotiated the Post-Petition Financing with the Lender on the most favorable terms upon which the Debtor could reasonably obtain the needed financing. *See* Jenkins Declaration ¶ 32.

16. If the obtaining of post-petition financing does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts typically grant a debtor considerable deference in acting in accordance with its business judgment. *See*, *e.g.*, *In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) ("In determining whether to approve a debtor's requests under Section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment."); *In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (observing that while Section 364 does not impose a specific standard, the debtor's eventual need to use the borrowed funds under Section 363 requires an "articulated business justification").

17. As set forth in the Jenkins Declaration, the Post-Petition Financing provides significant additional liquidity to the Debtor and thus will enable the Debtor, among other things, to maintain the continuity of its operations and maximize the value of its business and properties. Such financing is the sole means of preserving the Debtor, its business, and its assets as a going concern.

18. The Debtor believes that the approval of the Post-Petition Financing is in the best interests of its estate, its creditors, and all parties-in-interest and requests that the Court approve the Interim Order and, after the final hearing, enter the Final Order approving the Post-Petition Financing.

## VI. **NOTICE OF THE MOTION**

19. Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF or overnight delivery (or in lieu thereof and with the express written consent of the receiving party, by email delivery) to: (a) the Office of the United States Trustee for Region 11; (b) each of the Debtor's 20 largest unsecured creditors listed in the Debtor's

filing pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Lender and to Tramec Sloan LLC, the Debtor's senior and junior secured lenders; and (d) all other parties who have requested service of all filings via the Court's CM/ECF system. In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

20. Given that the relief requested in the Motion is critical to the Debtor's operations, that such relief is only being sought on an interim basis at the emergency hearing on the Motion, and that the Debtor would suffer irreparable harm absent such relief, the Debtor requests that the Court deem the limited notice provided as sufficient under Bankr. N.D. Ill. L.R. 9013-1.

WHEREFORE, the Debtor respectfully requests this Court enter the proposed Interim Order approving the Post-Petition Financing, set a final hearing to consider entry of the Final Order approving the Post-Petition Financing, and grant such other and further relief as is just and proper.

Dated: August 12, 2024        Respectfully Submitted,

BERKSHIRE INVESTMENTS, LLC

By: /s/ Steven R. Jakubowski
    One of Its Attorneys

Steven R. Jakubowski (ARDC #6191960)
Carolina Y. Sales (ARDC #6287277)
ROBBINS DIMONTE, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
Tel: 312-782-9000
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com

*Proposed Counsel for the Debtor*