IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Berkshire Investments LLC, | ) | Casse No. 24-11552 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. SECTION 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. SECTION 363 AND 364; (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C); AND (III) SHORTENING NOTICE**

Upon the motion (the *"Motion"*) dated August 12, 2024, of Berkshire Investments LLC (the *"Debtor"*) in the above-captioned case (a) seeking this Court's authorization pursuant to sections 105, 361, 363(c), 363(e), 364(c) and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the *"Bankruptcy Code"*) and Rules 2002, 4001(c), 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), and Rules 4001-2 and 5005- 3(D) of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the *"Local Rules"*) for the Debtor, *inter alia,* (i) to obtain post-petition financing (the *"Post-Petition Financing"*), up to an aggregate principal amount not to exceed $3,500,000 (as limited by the borrowing base formulas contained in the DIP Credit Agreement) at any time outstanding, plus accrued interest on the aggregate principal amount from NELI International Incorporated, a corporation formed under the laws of the Province of Ontario, Canada (the *"Lender"*); (ii) to grant the Lender first priority liens and security interests in all of the Debtor's currently owned and after acquired property to secure the Debtor's obligations under the Post-Petition Financing and (iii) to accord the Lender a super priority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the Post-Petition Financing with priority in payment for such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code sections 503(b) and 507(b), other than as described below and specifically excepting and subject and subordinate to the Carve-Out (as defined below in paragraph 13 hereof); (b) seeking this Court's authorization to use the Lender's cash collateral within the meaning of Bankruptcy Code section 363(a) (the *"Cash Collateral"*), pursuant to Bankruptcy Code section 363(c), and to provide adequate protection pursuant to Bankruptcy Code sections 361, 363(e) and 364(d) to the Lender; (c) seeking a preliminary hearing (the *"Preliminary Hearing"*) on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (this *"Interim Order"*) authorizing the Debtor to borrow from the Lender under the Post-Petition Financing up to $3,500,000 (as limited by the borrowing base formulas contained in the DIP Credit Agreement), on an interim basis upon entry of the Interim Order, plus accrued interest on the

1

aggregate principal amount, upon the terms and conditions set forth in this Interim Order, pending the Final Hearing referred to below; (d) requesting that a final hearing (the *"Final Hearing"*) be scheduled by this Court to consider entry of a final order (the *"Final Order"* and together with the Interim Order, the *"Financing Orders"*), authorizing upon entry of the Final Order on a final basis the Post-Petition Financing in the total aggregate amount of Credit Limit as set forth in the Credit Agreement; and (e) requesting that notice of the Motion be shortened under the circumstances, together with all other rights and remedies requested in the Motion.

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the *"Notice"*) was served by the Debtor on: (i) the Lender and its counsel, (ii) all other parties with liens of record on assets of the Debtor as of the Petition Date, (iii) the Office of the United States Trustee of the Northern District of Illinois (the "*U.S. Trustee*"), (iv) the United States Trustee for Region 11, (v) the twenty (20) largest unsecured creditors of the estates and (vi) any other party that has requested notice pursuant to Bankruptcy Rule 2002, all as more fully set forth in, and evidenced by, the Certificate of Service on file herein (collectively, the *"Noticed Parties"*) [Docket No. 12].

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Richard N. Jenkins in Support of Chapter 11 Petition and First-Day Motions*, and the other filings and pleadings made by the Debtor, and upon the entire record made at the Interim Hearing, the evidence and testimony presented at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]

A.      On August 8, 2024 (the *"Petition Date"*), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. The Debtor is in possession of its heir property, and operating and managing its business, as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108 (the *"Chapter 11 Case"*).

B.      This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Consideration of the Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O), and the Debtor confirms consent to the entry of a final order or judgment by the Court with respect to the Motion in the event it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[1] Findings of Fact shall be construed as Conclusions of Law and Conclusions of Law shall be construed as Findings of Fact, pursuant to Federal Rule of Civil Procedure 52. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the DIP Loan Documents.

2

C. Subject only to the rights of parties in interest that are specifically set forth in paragraph 25, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows:

(i) The Debtor has previously entered into a revolving line of credit and term facility with the Lender (the *"Pre-Petition NELI Loans"*).

(ii) **Pre-Petition NELI Loans**

a. <u>Parties</u>. The Lender, as lender, and the Debtor, as borrower

b. <u>Operative Documents</u>.

i. Loan and Security Agreement, dated February 17, 2021 (as amended, modified, extended, and/or renewed from time to time, the *"LSA"*);

ii. First Amendment to the LSA dated as of June 29, 2021;

iii. Second Amendment to the LSA dated as of October 25, 2021;

iv. Third Amendment to the LSA dated as of April 6, 2022;

v. Fourth Amendment to the LSA dated as of August 15, 2022;

vi. Fifth Amendment to the LSA dated as of January 18, 2023;

vii. Sixth Amendment to the LSA dated as of May 31, 2023;

viii. Forbearance Agreement and Seventh Amendment to Loan and Security Agreement dated as of November 16, 2023 (as from time to time amended and extended, the *"Forbearance Agreement"*);

ix. First Extension and Amendment of Forbearance Agreement dated as of December 5, 2023;

x. Second Extension of Forbearance Agreement dated as of January 23, 2024;

xi. Deposit Account Control Agreement (springing), dated as of February 17, 2021, between the Lender, The Debtor and Schaumberg Bank & Trust Company, N.A.

xii. Deposit Account Control Agreement (blocked), dated as of February 17, 2021, between the Lender, The Debtor and Schaumberg Bank & Trust Company, N.A.

xiii. General Security Agreement between CXM Investments LLC, a Delaware limited liability company, and the Lender, dated as of February 17, 2021;

xiv. UCC-1 Financing Statement filed with the Illinois Secretary of State on February 11, 2021, as Filing No. 26962153, as amended and continued from time to time;

xv. UCC-1 Financing Statement filed with the Delaware Department of State on February 11, 2021 as Filing No. 2021-1147686, as amended and continued from time to time;

xvi. Landlord Waiver and Consent Agreement between J2M-Cicero, LLC, as landlord, and the Lender, dated as of March 8, 2023;

xvii. General Continuing Guaranty Agreement, by Patrick Balson, in favor of the Lender, dated February 17, 2021;

xviii. General Continuing Guaranty Agreement, by Aaron Mercer, in favor of the Lender, dated February 17, 2021; and

xix. General Continuing Guaranty Agreement, by CXM Investments LLC, in favor of the Lender, dated February 17, 2021.

(collectively, the *"Loan Documents")*.

c. <u>Loan Status</u>. he outstanding balance under the Loan as of August 7, 2024 is $2,200,776.88 (the *"Loan Balance"* or the *"Pre-Petition Obligation"*) exclusive of all costs, expenses, and fees (including attorney's fees) owed to the Lender pre- petition.

d. <u>Collateral</u>.

i. A blanket lien on all or substantially all of the tangible and intangible personal property assets of the Debtor;[2] and

---

[2] Under Section 2 of the LSA, the Debtor granted a lien and security interest in favor of the Lender in and to the following described assets as each capitalized term is defined in the LSA (collectively, the *"Pre-Petition Collateral"*): all right, title and interest of the Debtor in and to all of the following, whether now owned or hereafter arising or acquired and wherever located: all Accounts; all Inventory; all Equipment; all Deposit Accounts (but excluding the Excluded Account as defined in Section 8 hereof); all General Intangibles (including without limitation all Payment Intangibles and Intellectual Property); all Investment Property; all Other Property; and any and all claims, rights and interests in any of the above, and all guaranties and security for any of the above, and all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds

4

      ii.  A blanket lien on all or substantially all of the tangible and intangible personal property assets of the Debtor's parent, CXM Investments LLC ("*CXMI*").[3]

 (collectively, the "*Collateral*")

 D. In accordance with the terms of the Pre-Petition Loan Documents, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind. As of the Petition Date, the Pre-Petition Obligations totaled not less than $2,200,776.88, exclusive of all costs, expenses, and fees (including reasonable attorney's fees) owed to the Lender pre- petition. Subject in all respects to the rights of third parties in paragraph 25 hereof, the Debtor further acknowledges, agrees and stipulates that (a) the Pre-Petition Liens (1) are valid, binding, enforceable and perfected liens in the Pre-Petition Collateral, (2) were granted to the Lender pre-petition for fair consideration and reasonably equivalent value, and (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b)(1) all of the Pre-Petition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Pre-Petition Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Pre-Petition Obligations exist in favor of the Debtor, and (3) no portion of the Pre-Petition Obligations or any payments made to or for the benefit of the Lender pre-petition are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) pursuant to the Pre-Petition Loan Documents, the Pre-Petition Obligations are secured by the Pre-Petition Liens against the Pre-Petition Collateral.

 E. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the Post-Petition Financing and the use of the Cash Collateral. The Debtor urgently requires financing and access to the Cash Collateral to (a) fund the Chapter 11 Case, and (b) sell its business as a going concern. The Debtor's need for financing is critical. In the absence of the Post-Petition Financing and such use of the Cash Collateral, the Debtor and its estate will suffer immediate and irreparable harm.

 F. Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain sufficient unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without: (i) the Debtor granting, pursuant to Bankruptcy Code section 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code sections 503(b) and 507(b), other than as described below, and (ii) securing such indebtedness and obligations with the security interests in and the first liens upon the property described below. The Lender objects to the priming of its prepetition liens and security interests pursuant to Bankruptcy Code

---

  of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the above, and all the Debtor's books relating to any and all of the above. The foregoing capitalized terms shall have the meanings ascribed to them in the LSA.

[3] CXMI is a holding company that holds the membership units in the Borrower. Patrick Balson and Aaron Mercer own 79.5% and 14.5% of CXMI, respectively.

section 364(d). The Debtor does not have the resources to secure such funding over the objection of the Lender, and the Lender has indicated it will not consent to such financing.

G. Based on the record presented to this Court by the Debtor, it appears (and the Debtor and the Lender have stipulated) that the Post-Petition Financing has been negotiated in good faith and at arm's length between the Debtor and the Lender, and any credit extended and loans made to the Debtor pursuant to this Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code section 364(e).

H. Based on the record before this Court, it appears (and the Debtor and the Lender have stipulated) that the terms of this Interim Order, including the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(B). The permission granted herein to use Cash Collateral, enter into the Post- Petition Financing, and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its immediate entry will, among other things, allow for the Debtor's business to continue to operate and facilitate the sale of Debtor's business as a going concern.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. *Motion Granted.* The Motion is granted as set forth herein.

2. *Authorization.* The Debtor is expressly authorized and empowered to (a) borrow money, use Cash Collateral, and perform its obligations pursuant to the provisions of this Interim Order and (b) enter into that certain Secured Super-Priority Post-Petition Credit Agreement dated August 12, 2024 and attached hereto as <u>Exhibit A</u> *(the "DIP Credit Agreement,"* together with the documents listed on Annex B of the DIP Credit Agreement, and any other documents, instruments or agreements entered into contemporaneously with the DIP Credit Agreement, as may be amended, restated, supplemented or otherwise modified from time to time, shall be referred to collectively as the *"DIP Loan Documents"*). The aggregate Post- Petition Financing under the DIP Credit Agreement shall at no time exceed the lesser of $3,500,000 or the Borrowing Base (as therein defined). To the extent there is a conflict between the terms of the DIP Credit Agreement and this Interim Order, the terms of this Interim Order shall control in all respects. All post-petition loans and all other indebtedness and obligations incurred on or after the Petition Date by the Debtor to the Lender pursuant to this Interim Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are subsequently referred to herein as the *"DIP Obligations,"* and, together with the Pre-Petition Obligations, as the *"Obligations."*

6

3. *Borrowings; Use of Cash Collateral.* Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, (a) the Lender hereby consents to the Debtor's use of the Cash Collateral in accordance with the terms hereof and (b) the Lender will make post-petition loans (the *"DIP Loans"*) to the Debtor in accordance with the Approved Budget(s), as defined in and in accordance with the provisions of paragraph 15 hereof.

4. *Events of Default.* Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or future events of default under the Pre-Petition Loan Documents or the DIP Loan Documents ("*Events of Default*"). Without prejudice to, or waiver of, the Lender's rights and remedies against the Debtor in respect of any Post-Petition Defaults (defined below) hereafter arising pursuant to paragraph 6 hereof, the Lender agrees to forbear from foreclosing its liens on any Pre-Petition Collateral, to seek to recover the Pre-Petition Obligations against Debtor or otherwise take enforcement action against the Debtor based solely on any Event of Default which occurred prior to the entry of this Interim Order (collectively, the *"Existing Defaults"*); *provided* that, (a) subject to the provisions of paragraph 11 hereof, such forbearance shall terminate upon the Post-Petition Termination Date (as defined in paragraph 6 hereof), and (b) except as otherwise expressly set forth herein, the automatic stay shall continue to apply with respect to all assets of the Debtor's estate.

5. *Interest, Fees, Costs and Expenses.* All DIP Loans shall bear interest at an annual rate equal to the Prime Rate in effect from time to time plus 1.75% per annum, accruing daily and payable monthly, *provided* that during the existence of any default under the Post-Petition Financing that such interest shall be increased by an additional four percent (4%). The Lender shall be entitled to recover all of its fees and costs payable under the DIP Credit Agreement from Cash Collateral or under the Post-Petition Financing. In consideration for providing the Post-Petition Financing, the Lender will be entitled to receive a commitment fee of $70,000, which fee shall be fully earned upon the entry of this Interim Order and payable in accordance with the DIP Credit Agreement.

6. *Termination of Post-Petition Credit.* The Lender's willingness to make loans hereunder and the Lender's consent to the Debtor's use of Cash Collateral shall be subject to termination (the *"Post-Petition Termination Date"*) and all Obligations shall be immediately due and payable in cash (except as the Lender may otherwise agree in writing in its sole discretion) upon the occurrence of any of the following events (the *"Post-Petition Defaults"*), in each case subject to the *"DIP Cure Period"* defined below:

   (i) The Debtor fails to pay any amount payable under the DIP Credit Agreement when due and payable, and such failure to pay continues for period of three (3) business days thereafter following the receipt of written notice from the Lender (the *"DIP Cure Period"*);

   (ii) Subject to the expiration of the DIP Cure Period: (A) the Debtor fails or neglects to perform, keep, or observe any of the provisions of Sections 1, 4, or 5 of the DIP Credit Agreement, (B) an "Event of Default" occurs under any other DIP Loan Documents; or (C) the Debtor fails or neglects to perform, keep, or observe any of the provisions or obligations required under the Financing Orders;

7

(iii) Any representation or warranty herein, in any other DIP Loan Documents, or in any written statement, report, financial statement or certificate made or delivered to the Lender contemporaneously herewith is untrue or incorrect in any material respect as of the date when made or deemed made (other than any representation or warranty qualified as to a Material Adverse Effect, which such representation or warranty must be true and correct in all respects as of the date when made or deemed made).

(iv) The DIP Credit Agreement, any other DIP Loan Documents, or Financing Order shall, for any reason, cease to create a valid Lien on the Collateral purported to be covered thereby or such Lien shall cease to be a perfected priming first-priority Lien (except as expressly provided in any Financing Order) pursuant to Section 364 of the Bankruptcy Code or the Debtor shall so allege in any pleading filed in any court.

(v) A trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code shall be appointed in the Chapter 11 Case.

(vi) Entry of an order by the Bankruptcy Court converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case.

(vii) Application by the Debtor (or any other party with the support of the Debtor) to the Bankruptcy Court in the Chapter 11 Case or any other court of competent jurisdiction for an order authorizing the granting of any liens or claims *pari passu* or senior to the Lender's Lien and the Super-Priority Indebtedness.

(viii) Filing by the Debtor of any plan or reorganization other than one providing for the indefeasible payment in full in cash, on or prior to the maturity date of the DIP Loan;

(ix) The Financing Orders are amended, stayed, vacated, or modified without the Lender's prior written consent.

(x) Filing of any challenge by the Debtor to the validity, priority, or extent of any Liens in favor of the Lender.

(xi) The entry by the Bankruptcy Court of an order terminating the Debtor's right to use Cash Collateral;

(xii) The Debtor's bankruptcy estate becomes administratively insolvent, with such determination being made by comparing the value of the Debtor's assets, taken as a whole, to the amount of Debtor's post-petition administrative expense liabilities without regard to current cash flows.

8

  (xiii) The Debtor shall use cash collateral or any proceeds of the DIP Loan, for any item other than those set forth in, and in accordance with, the Budget and as approved by the Bankruptcy Court or prepays any pre-petition debt except as approved by the Bankruptcy Court and the Lender; or

  (xiv) The Debtor shall fail to comply with the Milestones set forth in Section 4.10 of the DIP Credit Agreement, subject in all respects to the *"Milestone Cure Period"* as therein defined.

  7. *Security for Indebtedness.*

  (a) The Lender is hereby granted as security for the DIP Obligations, pursuant to sections 363, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first lien (the *"DIP Liens"*) on the DIP Collateral, as that term is defined on Annex A to the DIP Credit Agreement. The DIP Liens shall be junior in priority to any valid, perfected and unavoidable liens to the extent that such liens are senior to the Pre-Petition Liens under applicable law as of the Petition Date, but solely upon an adjudication that such alleged lien is valid, and including any liens that are properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code. The Lender at its option may release at any time from its liens and security interests any assets determined by the Lender to have a risk of environmental liabilities which the Lender in its sole discretion deems unacceptable. The interest of the Debtor's estate in any property for which a security interest or lien is avoided or otherwise preserved for the benefit of Debtor's estate under section 551, or any other provision of the Bankruptcy Code, shall be subordinate to the DIP Liens. The DIP Liens expressly exclude any and all claims or rights of action arising under chapter 5 of the Bankruptcy Code (collectively, the "*Avoidance Actions*").

  (b) For all DIP Obligations arising under this Interim Order, the Lender is granted an allowed super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia,* sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the *"Superpriority Claim"*), *provided, however*, that the Superpriority Claim shall be subject to the payment of the Carve-Out and the Approved Budget Expenses incurred, accrued, unpaid or otherwise payable prior to the Post-Petition Termination Date in accordance with this Interim Order. The Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtor, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor, subject to the limitations provided herein. Notwithstanding anything herein to the contrary, the Superpriority Claim shall not be recoverable from the Avoidance Actions.

(c)     All Cash Collateral arising from Pre-Petition Collateral (including as provided and set forth under section 552(b) of the Bankruptcy Code) (the "*Pre-Petition Cash Collateral*") subject to the liens granted by the Debtor shall be deemed to be collateral for the Pre-Petition Obligations, as well as for the DIP Loans. All Cash Collateral arising from the DIP Collateral (the *"Post-Petition Cash Collateral"*) subject to the liens granted by the Debtor shall be deemed to be collateral for the DIP Obligations and the Adequate Protection Claims, as defined and in the manner set forth under paragraph 8.

8.     *Adequate Protection for Use of Cash Collateral.* As adequate protection for the Lender's consent to the use of Cash Collateral, the Pre-Petition Obligations shall bear interest at an annual rate equal to the WSJ Prime Rate in effect from time to time plus 1.75% per annum, accruing daily and payable monthly, and the Lender is hereby granted valid, binding, continuing, enforceable fully perfected, first-priority replacement liens on and senior security interest in and to all of the DIP Collateral (the *"Adequate Protection Liens"*), subject only to the Carve-Out, the Approved Budget Expenses and the DIP Liens, for any diminution in the value of the Lender's interest in the Pre-Petition Collateral including the Pre-Petition Cash Collateral resulting from the sale, lease or use of the Pre-Petition Collateral from and after the Petition Date, other than the priming of the Pre-Petition Collateral by the DIP Collateral (the *"Adequate Protection Claim"*).

9.     *Perfection of New Liens.* All liens and security interests on or in the DIP Collateral and the Adequate Protection Liens granted to the Lender by this Interim Order and the Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; *provided, however,* that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the Lender may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the Lender may require, and (ii) the Lender may require the Debtor to deliver to the Lender any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith. If the Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if the Lender, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents, or taking possession, shall be deemed to have been filed or recorded, or taken, in the Chapter 11 Case, as of the entry of this Interim Order but with the priorities as set forth herein. The Lender may (in its discretion) but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has any real or personal property and such filing or recording shall constitute further evidence of perfection of the Lender's interests in the DIP Collateral.

10.     *Waiver.* The Debtor and the estate (and any party in interest acting on behalf of the Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without the Lender's prior written consent (which may be withheld in its sole discretion), or (b)

10

without prior indefeasible payment and satisfaction in full in cash of the DIP Obligations in this Interim Order and, subject to the entry of a Final Order, the Obligations: (i) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are *pari passu* with or superior to the Lender's liens on and security interests in such DIP Collateral, other than the Carve-Out; (ii) to return goods pursuant to section 546(c) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's pre- petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise, unless otherwise directed by Court order; or (iii) to modify or affect any of the rights of the Lender under this Interim Order or any DIP Loan Documents by any order entered in the Chapter 11 Case or any subsequent or superseding case, including any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto (collectively, a *"Successor Case"*).

    11.    *Modification of Automatic Stay; Other Remedies.*

    (a)    Except as set forth in subparagraph (b) of this paragraph, which governs any action by the Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Interim Order and the other DIP Loan Documents without further application or motion to, or order from, the Court. Except as set forth in subparagraph (b) of this paragraph, the Lender is hereby granted leave, among other things, to (i) receive and apply payments of the DIP Obligations and collections on and proceeds of the Pre-Petition Collateral and the DIP Collateral to the DIP Obligations and the remaining Obligations in the manner specified in this Interim Order and the DIP Loa Documents, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Interim Order as provided therein, (iv) give the Debtor any notice provided for in any of the DIP Loan Documents or this Interim Order, and (v) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Interim Order solely from and after the Post-Petition Termination Date.

    (b)    Upon the occurrence of the Post-Petition Termination Date, the Debtor's ability to use Cash Collateral and proceeds of the Post-Petition Financing shall terminate without notice. The Lender shall thereafter be entitled to deliver written notice of its intention to exercise its remedies under the DIP Loan Documents and following the expiration of seven (7) calendar days, the Lender will be entitled to exercise the remedies provided and set forth in Section 7 of the DIP Credit Agreement. Unless the Bankruptcy Court orders otherwise, (x) the automatic stay, as to the Lender, shall be automatically terminated at the end of such notice period, without further notice, hearing, or order, and (y) the Debtor shall cooperate with the Lender, to effect an orderly liquidation of the DIP Collateral on terms and conditions acceptable to the Lender. The Debtor shall immediately

11

provide notice to the Lender (with a copy to counsel to any official committee of unsecured creditors (the "Committee")) of the occurrence of any Post-Petition Default. Notwithstanding anything herein to the contrary, the rights of the Lender upon the occurrence of the Post-Petition Termination Date shall be expressly subject to the payment of, and funding made available from the Lender or any proceeds of sale: (i) for all fees and expenses incurred, accrued, unpaid or otherwise payable under the Carve-Out (as defined in paragraph 13 hereof); and (ii) for all incurred, accrued, unpaid or otherwise payable Approved Budget Expenses.

12.     *Priority Claims.* Subject to the Carve-Out and the Approved Budget Expenses, the DIP Obligations shall have the highest administrative priority under section 364(c)(l) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise, whether incurred in the Chapter 11 Case or any Successor Case, and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Chapter 11 Case or any Successor Case. Nothing in this Interim Order or the Approved Budget(s) or any other budget shall constitute the consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including any amounts set forth in the Approved Budget or any other budget) against the Lender, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise.

13.     *Carve-Out.*

(a)     The Lender's liens on and security interests in the DIP Collateral and the Pre-Petition Collateral and its administrative expense claims under sections 364(c)(1) or 507(b) of the Bankruptcy Code, the liens securing the Subordinated Debt (as such term is defined in the Subordination Agreements), and any section 507(b) claims granted pursuant to this Interim Order or the Final Order shall be subject only to the following (the "*Carve-Out*"): (i) all expenses set forth in the Budget and incurred prior to the occurrence of an Event of Default; (ii) all fees required to be paid to the clerk of the Bankruptcy Court, any agent thereof and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (iii) to the extent allowed by the Bankruptcy Court, all claims for unpaid fees, costs and expenses (the "*Professional Fees*") incurred by persons or firms retained by the Debtor or any Committee whose retention is approved by the Bankruptcy Court pursuant to sections 327, 328 and 1103 of the Bankruptcy Code (collectively, the "*Professionals*") that are based upon services rendered at any time prior to the occurrence of an Event of Default. Nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in clauses (i), (ii) or (iii) above, on any grounds.

(b)     Notwithstanding anything to the contrary in this Interim Order or the Loan Documents, no proceeds of the Carve-Out, the Obligations, Cash Collateral (including any pre- petition retainer funded by the Lender pursuant to the Pre-Petition Loan Documents), Pre- Petition Collateral or DIP Collateral may be used to pay any claims for services rendered by any of the Debtor's Professionals, the Committee's Professionals or any other person in connection with the assertion of or joinder in any claim, counterclaim, action,

proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or the liens and security interests of the Lender in the Pre-Petition Collateral or the DIP Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Lender of any of its rights and remedies under the Pre-Petition Loan Documents, this Interim Order and/or the DIP Loan Documents or the Lender's enforcement or realization upon any of the liens on or security interests in any Pre-Petition Collateral or DIP Collateral. The Lender shall retain its rights as a party in interest to object to any claims of any of the Debtor Professionals and the Committee Professionals.

14. *Cash Collection Procedures.* From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or services provided by the Debtor and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time, shall be deposited in the same bank account(s) into which the collections and proceeds of the Pre-Petition Collateral were deposited under the Pre-Petition Credit Agreement (or in such other accounts as are designated or consented to by the Lender from time to time). Except as otherwise set forth herein, all Cash Collateral in the possession or control of the Debtor as of the Petition Date and as otherwise set forth in section 552(b) of the Bankruptcy Code, constitutes proceeds of the Pre-Petition Collateral. All Cash Collateral shall only be utilized in conformance with the Approved Budget. If applicable, all financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtor are located are hereby authorized and directed to comply with any request of the Lender to turnover to the Lender all funds therein without offset or deduction of any kind.

15. *Budget; Use of Loan and DIP Collateral Proceeds.* Attached as Exhibit B hereto and incorporated herein by reference is a budget (which has been approved by the Lender) setting forth by line item all projected cash receipts and cash disbursements for the time period from the Petition Date through the week ending November 4, 2024 (the *"Approved Budget"*). The Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Debtor agree in writing in their respective sole discretion (each such additional budget, a *"Supplemental Approved Budget"*) (the Approved Budget and any and all Supplemental Approved Budgets shall constitute *"Approved Budget(s)."*) *(The aggregate of all expenses approved under the Approved Budgets, together with the Permitted Variances as set forth in Section 5.8 of the DIP Credit Agreement, shall be collectively referred to as the "Approved Budget Expenses").* Except as otherwise provided herein, the proceeds of DIP Loans or other extensions of credit made by the Lender to the Debtor pursuant to this Interim Order and the DIP Loan Documents, all proceeds of DIP Collateral and all Post-Petition Cash Collateral shall be used only as follows: (a) prior to the Post-Petition Termination Date, *first,* to the payment of the Approved Budget Expenses (subject to the limitations and exceptions set forth in this ordering paragraph), and the Carve-Out, *second*, to the payment of the DIP Loan, and *third*, to any Adequate Protection Claims, and *fourth*, to the remaining Obligations; and (b) on or after the Post-Petition Termination Date, *first*, to the payment of any Approved Budget Expenses and the Carve-Out that were incurred, accrued, unpaid or otherwise payable prior to the Post-Petition Termination Date, in amounts not to exceed the line items set forth for in the Approved Budgets through the Post-

13

Petition Termination Date, *second*, to the DIP Loan, and *third,* to the remaining Obligations. The Lender shall have no obligation with respect to the Debtor's use of the proceeds of the Post-Petition Financing, the DIP Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtor's compliance with any Approved Budgets or to pay (directly or indirectly from its DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget(s). Funds borrowed under this Interim Order and Cash Collateral used under this Interim Order shall be used by the Debtor in accordance with this Interim Order. The Lender's consent to any Approved Budget(s) shall not be construed as consent to the use of any Cash Collateral or a commitment to continue to provide Post-Petition Financing after the occurrence of a Post-Petition Termination Date, regardless of whether the aggregate funds shown on the Approved Budget(s) have been expended. To induce the Lender to permit the Debtor to use Cash Collateral and borrow additional funds, the Debtor has agreed, and this Court hereby orders, that as long as any of the Obligations are outstanding, the Debtor shall not seek, assert, argue for, encourage or support the use of Cash Collateral of the Lender by the Debtor except as expressly permitted and consented to by the Lender pursuant to the terms of this Interim Order.

16. *Covenants.* The Debtor shall timely comply with all of the covenants set forth in this Interim Order and the DIP Loan Documents, subject in all respects to the DIP Cure Period.

17. *Application of Pre-Petition Collateral Proceeds.* (a) Subject to paragraph 15 hereof and the prior payment of Approved Budget Expenses, and the Carve-Out, all proceeds of Pre-Petition Collateral including Pre-Petition Cash Collateral, shall thereafter be applied (i) *first*, to the payment of the DIP Loan; (ii) *second*, to the payment of the Adequate Protection Claims; and (iii) *third*, to the payment of the Pre-Petition Obligations.

(b) In the event that there is ambiguity as to whether particular collateral is Pre- Petition Collateral or DIP Collateral, or whether proceeds are proceeds of Pre-Petition Collateral or DIP Collateral, such collateral shall be deemed to be Pre-Petition Collateral and such proceeds shall be deemed to be proceeds of Pre-Petition Collateral and applied accordingly in accordance with the provisions of this paragraph. The Debtor shall not have the right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Pre-Petition Collateral or DIP Collateral other than in the manner set forth in this paragraph.

18. *Non-Ordinary Course Dispositions.* No sale, lease or other disposition of Pre-Petition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's written consent.

19. *Books and Records.* The Debtor shall permit the Lender and any authorized representatives designated by the Lender (including its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's respective financial and accounting records, and to request copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtor shall promptly provide to the Lender and the Lender's designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the covenants in the DIP Loan Documents and this Interim Order.

20. *The Lender's Reservation of Rights; No Waiver.* The Lender does not waive, and expressly reserves, any and all claims, defenses, rights, and remedies it has pursuant to any or all of the Pre-Petition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent, or other representative of the Debtors. In addition, the rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of the Lender arising under this Interim Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its pre- petition capacity, under the Pre-Petition Loan Documents.

21. *Order Binding on Successors.* The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of Debtor's estate or of any estate in any Successor Case). Except as otherwise explicitly set forth in this Interim Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

22. *Effect of Dismissal, Conversion or Substantive Consolidation.* If the Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, the Lender's rights and remedies under this Interim Order and the DIP Loan Documents shall be and remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, superseded, or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supersession or substantive consolidation, all of the terms and conditions of this Interim Order, including the liens and the priorities granted hereunder, shall remain in full force and effect.

23. *Releases and Validation of Pre-Petition Obligations and Liens; Allowance of Secured Claim.* The releases, discharges, waivers, and agreements set forth in Recital C and in this paragraph will be subject to the rights of the Committee and any other party in interest to object on the terms and conditions set forth in paragraph 25. The Debtor and its estate, hereby: (a) release and discharge the Lender, together with its affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents, any aspect of the pre-petition relationship between the Lender and the Debtor, or any other acts or omissions by the Lender in connection with any of the Pre-Petition Loan Documents or its pre-petition relationship with the Debtor; (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability (under sections 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Obligations and the security interests in and liens on the Pre-Petition Collateral in favor of the Lender; and (c) agree, without further Court order, to the allowance of the pre-petition claims of the Lender pursuant to sections 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Obligations as fully secured claims according to the Lender's books and records, the principal amount of which is not less than $2,200,776.88 as of the Petition Date, plus accrued pre-petition and post-petition interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan Documents.

24. *The Lender's Relationship with the Debtor.* In making decisions to advance any loans or other extensions of credit to the Debtor, in administering any loans or other extensions of

15

credit, or in taking any other actions reasonably related to this Interim Order or the DIP Obligations or the DIP Loan Documents (including the exercise of its approval rights with respect to any Budget), the Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender and the Debtor.

25. *Objections by Parties in Interest.* (a) The stipulations, admissions and releases contained in this Interim Order shall be binding on the Debtor and all parties in interest, including any Committee or Trustee, unless such Committee, other committee, party in interest (other than the Debtor), or chapter 7 trustee that is appointed prior to the expiration of the Challenge Period (as defined below) (i) obtains the authority to commence and commences on or before the date that is the later of 60 days after formation of any Committee, 75 days after the Petition Date, or such later date as has been ordered by the Court upon a finding of exceptional circumstances warranting an extension beyond the aforementioned period, or otherwise agreed to, in writing, by the Lender (such time period shall be referred to as the *"Challenge Period,"* and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the *"Challenge Period Termination Date"*): (x) files prior to the Challenge Period Termination Date, a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, or releases included in this Interim Order, or (y) files prior to the Challenge Period Termination Date, a contested matter or adversary proceeding against the Lender in connection with or related to the Pre-Petition Obligations, the Pre-Petition Loan Documents, the validity, enforceability, priority or extent of the Lender's liens on the Pre-Petition Collateral, or the actions or inactions of the Lender arising out of or related to the Pre-Petition Obligations, or otherwise, including any claim against the Lender in the nature of a "*lender liability*" claim, or any other causes of action, setoff, counterclaim or defense to the Pre-Petition Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code) (the objections, challenges, actions and claims referenced in clauses (x) and (y), collectively, the *"Claims and Defenses"*) and (ii) obtains a judgment from this Court in any such timely and properly commenced contested matter or adversary proceeding asserting the Claims and Defenses. Nothing in this paragraph expands the authority of an entity to assert a Claim or Defense.

(b) If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then the admissions, stipulations, findings and releases included in this Interim Order, including the release provisions herein, shall be binding on all parties in interest, including any Committee, and (i) the Pre-Petition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Case and any subsequent chapter 7 case, (ii) the Lender's liens on the Pre-Petition Liens shall be deemed legal, valid, binding, enforceable and properly perfected, not subject to recharacterization, subordination, avoidance or reduction and (iii) the Pre-Petition Obligations, the Pre-Petition Liens, the conduct of the Lender, and the Lender itself shall not be subject to any other or further challenge by any party in interest, and any such

16

party shall be enjoined and forever barred from seeking to exercise the rights of the Debtor's estate regarding any such challenge, including any successor thereto, or from asserting any Claims and Defenses against the Lender, or its respective agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys or advisors (solely in its capacities as such). If any such adversary proceeding or contested matter is timely filed prior to the Challenge Period Termination Date, the stipulations and admissions and provisions contained in this Interim Order or the Final Order shall nonetheless remain binding and preclusive on the Committee, the Debtor's and the Debtor's estate and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter by such party. The Challenge Period may be extended for the benefit of any one or more parties by written agreement of the Lender in its sole discretion without further order of the Court. Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or the Debtor's estate, including any claim and defense or other claim against the Lender. If a chapter 7 trustee is appointed prior to the expiration of the Challenge Period, such trustee shall have until the later of (a) the termination of the Challenge Period or (b) twenty-one (21) days following such trustee's appointment, to commence a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, or releases included in this Interim Order, or to seek an extension of the Challenge Period.

26.  *Effect of Modification of Order.* The Debtor shall not, without the Lender's prior written consent, seek to modify, vacate, or amend this Interim Order or any DIP Loan Documents. If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any DIP Obligations outstanding immediately prior to the effective time of such stay, modification or vacatur, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such DIP Obligations. Notwithstanding any such stay, modification or vacatur, any DIP Obligations outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights, privileges and benefits, including the security interests and priorities granted herein, with respect to all such DIP Obligations.

27.  *Safe Harbor.* The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code.

28.  *Subsequent Hearing;* Procedure *for Objections and Entry of Final Order.* The Motion is set for a Final Hearing before this Court at **11:00 a.m. on September 4, 2024** (such date or such later date to which the Final Hearing is adjourned or continued with the Lender's consent, the *"Final Hearing Date"*), at which time any party in interest may present any timely filed objections to the entry of a Final Order, in form and substance acceptable to the Lender in its sole discretion.  The Debtor shall, within five (5) days from the entry of this Interim Order, serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim

Order, by regular mail upon (i) the Noticed Parties, and (ii) any other party which theretofore has filed in the Chapter 11 Case a request for special notice with this Court and served such request upon the Debtor's counsel. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Illinois no later than **August 28, 2024**, **which objections shall be served so that the same are received on or before 4:00 p.m. (prevailing Central time) of such date** by (i) Steve Jakubowski and Carol Sales, Robbins DiMonte, Ltd., proposed counsel to the Debtor, (ii) Teresa Ruiz Schober, Schober & Schober, P.C., counsel to the Lender, (iii) U.S. Department of Justice, and (iv) the Office of the U.S. Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Interim Order shall be deemed waived unless filed and served in accordance with this paragraph.

29. *No Marshalling.* Subject to entry of the Final Order, the Lender shall not be under any obligation to marshal any assets in favor of the Debtor or any other party or against or in payment of any or all of the Obligations.

30. *Shortened Notice.* Notice of the Motion on a shortened and expedited basis is allowed and approved.

31. *Objections Overruled or Withdrawn.* All objections to the entry of this Interim Order have been withdrawn or overruled.

32. *Controlling Effect of Order.* To the extent any provisions in this Interim Order conflict with any provisions of the Motion, any Pre-Petition Loan Documents or any DIP Loan Documents, the provisions of this Interim Order shall control.

33. *Order Effective.* This Interim Order shall be effective as of the date of signature by the Court.

Dated: August 14, 2024

HONORABLE DAVID C. CLEARY
UNITED STATES BANKRUPTCY COURT

18