Page 1 of 34

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| | ) | |

# ORDER (A) APPROVING SALE PROCESS; (B) APPROVING BID PROCEDURES; (C) APPROVING BREAK-UP FEE AND BID PROTECTIONS FOR THE STALKING HORSE BIDDER; (D) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING FORM OF NOTICES; (F) EXCUSING PAGE LIMIT; AND (G) SCHEDULING A PUBLIC AUCTION AND SALE APPROVAL HEARING

Upon the motion (the "Sale Motion") of Berkshire Investments LLC d/b/a Chicago Extruded Metals Company, debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), for the entry of: (i) an order (the "Sale Procedures Order"): (a) establishing procedures for the sale (the "Asset Sale") of all, or substantially all, or a portion of the Debtor's assets (the "Sale Assets"), including a stalking horse asset purchase agreement with a break-up fee, expense reimbursement, and an initial overbid amount, together with a form asset purchase for non-stalking-horse bidders; (b) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases; (c) approving the form of notices of the sale and other form notices; (d) excusing the page limit under the Court's local rules; and (e) scheduling a public auction and sale approval hearing; and (ii) an order (the "Sale Approval Order"): (a) approving the sale of the Debtor's assets free and clear of claims, liens, and encumbrances; (b) approving the assumption and assignment of executory contracts and unexpired leases; and (c) granting related relief; it appearing that the relief requested in the Sale Motion seeking entry of the Sale Procedures Order is in the best interest of the Debtor's estate and its creditors; this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

Page 2 of 34

the Sale Motion and the opportunity to object to entry of the Sale Procedures Order being a core proceeding pursuant to 28 U.S.C. § 157; adequate notice of the Sale Motion's request for entry of the Sale Procedures Order having been given to all parties entitled thereto; and it appearing that no other notice need be given or is required under the circumstances except as set forth herein; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:** [1]

A. The Debtor has articulated good and sufficient reasons for approval of the Approved Bid Procedures, the Break-Up Fee, the Expense Reimbursement, and Initial Overbid Amount (collectively, the "Bid Protections"), in connection with the proposed Asset Sale.

B. The Approved Bid Procedures and the Bid Protections are reasonable and appropriate to maximize the return for the Sale Assets;

C. The Break-Up Fee and Expense Reimbursement are:

i. A fair and reasonable inducement for the Stalking Horse to submit the Stalking Horse Bid as a minimum bid on which the Debtor, its creditors, and other Bidders can rely to create a market for the Sale Assets;

ii. Commensurate to the real and substantial benefit that the Stalking Horse Bid will confer upon the estates of the Debtor;

iii. Reasonable and appropriate, considering the size and nature of the proposed sale and comparable transactions, the commitments to be made, and the efforts expended and to be expended by the Stalking Horse in connection with the Stalking Horse APA;

---

[1] Capitalized terms not otherwise defined herein shall have the respective meanings ascribed thereto in the Approved Bid Procedures (as defined below), attached hereto as Exhibit A.

Page 3 of 34

iv. Necessary to induce the Stalking Horse to pursue the Asset Sale and to be bound by the Stalking Horse APA; and

v. A necessary cost of the sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, EFFECTIVE IMMEDIATELY:**

1. The request in the Sale Motion seeking entry of this Sale Procedures Order and other relief is hereby granted in the manner and to the extent provided herein, with this Order serving as the entered and approved Sale Procedures Order.

2. The Stalking Horse APA filed on the docket as ECF No. 26-27 is hereby deemed to be and shall constitute the Stalking Horse Bid under the Approved Bid Procedures and the Bid Protections described herein, in the Approved Bid Procedures, and in the Stalking Horse Bid be and are hereby approved.

3. The Form APA filed on the docket as ECF No. 28 is hereby deemed to be and shall constitute the Form APA under the Approved Bid Procedures. The Debtor is authorized in its reasonable discretion after consultation with the Constituent Parties to revise the Form APA (and without prejudice to the right of the Stalking Horse Bidder to object to any such action by the Debtor).

4. The bid procedures set forth in the *Approved Bid Procedures* attached hereto as **Exhibit A** and expressly made a part hereof and incorporated herein (the "Approved Bid Procedures") are hereby approved. The Debtor is hereby permitted in its reasonable discretion to revise the Approved Bid Procedures after consultation with the Constituent Parties (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures).

Page 4 of 34

5. All persons or entities who submit a Qualified Bid for any of the Sale Assets shall be deemed to have read and understood the terms and conditions of the Approved Bid Procedures and must comply with, and will be bound by, this Sale Procedures Order and the Approved Bid Procedures.

6. The *Summary Notice of Sale of All or Substantially All Assets of Debtor* attached hereto as **Exhibit B** and expressly made a part hereof and incorporated herein (the "Summary Sale Notice") is hereby approved.

7. All objections to the Sale Motion or the relief requested therein, to the extent they pertain to the entry of this Sale Procedures Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

8. The Debtor is hereby authorized and empowered to take such steps and perform such actions as may be necessary to implement and effect the sale process contemplated by, and consistent with, this Sale Procedures Order.

9. Within five (5) business days of the entry of this Sale Procedures Order, the Debtor will cause notice of the Auction to be published in the Chicago Tribune and at least one trade publication, in consultation with the Committee.

10. The deadline for the submission of the Qualified Bids (the "Bid Deadline") shall be on or before **4:00 p.m. (prevailing Central time)** on **October 15, 2024**; provided, however, that the Debtor may, after consultation with the Constituent Parties, consider and accept late bids received prior to or at the Auction (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures).

Page 5 of 34

11. The auction (the "Auction") for the Sale Assets shall take place on **October 22, 2024, at 10:00 a.m. (prevailing Central time)** at the offices of Robbins DiMonte, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, Illinois 60601, or such later time or other place as the Debtor, after consultation with the Constituent Parties, shall notify all Qualified Bidders and all Notice Parties (as defined below) (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures). In the event that the Stalking Horse is the only Qualified Bidder, or the Debtor receives one or more Qualified Bids which the Debtor in its reasonable discretion, after consultation with the Constituent Parties, does not believe to be a higher or otherwise better bid than the Stalking Horse Bid when taking into account, among other things, the Bid Protections, then the Debtor, after consultation with the Constituent Parties, shall have the right, but not the obligation, to cancel the Auction and proceed directly to the Sale Hearing (as defined below) to seek entry of the Sale Approval Order approving the Stalking Horse APA.

12. In the event the Debtor is obligated to pay the Break-Up Fee and Expense Reimbursement, such amounts shall be paid at closing out of the Debtor's proceeds from the sale of the Sale Assets. The Break-Up Fee and Expense Reimbursement shall be entitled to treatment as an allowed administrative priority claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

13. In the event the Debtor is not obligated to pay the Break-Up Fee and Expense Reimbursement under the terms of (a) this Sale Procedures Order, (b) the Approved Bidding Procedures, and (c) the Stalking Horse APA, no claim against the Debtor's estate will arise on account of the Break-Up Fee and Expense Reimbursement.

Page 6 of 34

14. The Court shall conduct a hearing to consider approval of the Asset Sale (the "Sale Hearing") and entry of the Sale Approval Order, on **October 30, 2024 at 1:00 p.m.** at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Courtroom 644, Chicago, Illinois 60604, or such later time or other place as the Debtor shall notify all Qualified Bidders and all Notice Parties, to consider the sale and enter the Sale Approval Order.

15. All objections to the sale of the Sale Assets and entry of the Sale Approval Order must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules for the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division; (c) be filed on or before **12:00 p.m. (prevailing Central time) on October 28, 2024** (the "Sale Objection Deadline"), with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 644, Chicago, Illinois 60604 (the "Court Clerk"), so as to be received on or before the Sale Objection Deadline by the following parties (collectively, the "Notice Parties"): (i) counsel to the Debtor, Steve Jakubowski and Carolina Y. Sales of Robbins DiMonte, Ltd., 180 N. LaSalle Street, Suite 3300, Chicago, Illinois 60601; (ii) counsel to NELI International Ltd. ("NELI"), Teresa Ruiz Schober of Schober & Schober, P.C., 1611 Nueces Street, Austin, Texas 78701, and William J. Factor, Esq., of Law Office of William J. Factor, Ltd., 105 W. Madison St., Ste., 2300, Chicago, Illinois 60602; (iii) the Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; and (iv) counsel for the Official Committee of Unsecured Creditors, Shelly A. DeRousse and Elizabeth L. Janczak of Smith Gambrell & Russell LLP, 311 S. Wacker Dr. Suite 3000, Chicago, Illinois 60606. For avoidance of doubt, service to the Notice Parties through the Court's CM/ECF system shall expressly satisfy the service requirement. To be heard by the Court at the Sale Hearing, all

objections must be timely filed and state with reasonable specificity the nature of each objection to the sale of the Sale Assets or entry of the Sale Approval Order.

16. No later than five (5) business days following entry of this Sale Procedures Order, the Debtor shall file a notice with the Court and serve same, by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email), to any non-Debtor party to any executory contract or unexpired lease (collectively, the "Executory Contracts / Unexpired Leases," and each, an "Executory Contract / Unexpired Lease") whose proposed assumption and assignment is contemplated by Schedule 2.01(d) of the Stalking Horse APA (the "Stalking Horse Executory Contract Assumption Schedule"), substantially in the form attached hereto as **Exhibit C**, which is expressly made a part hereof and incorporated herein (the "Assumption Notice").

17. The Assumption Notice shall (a) state the cure amounts that the Debtor reasonably believes are necessary to assume and assign each such Executory Contracts/Lease pursuant to Section 365 of the Bankruptcy Code (collectively, the "Cure Amounts" and each a "Cure Amount"); and (b) notify the non-Debtor party that such party's Executory Contract / Unexpired Lease may be assumed and assigned to any purchaser of the Sale Assets who is (i) the Prevailing Bidder or Back-Up Bidder at the Auction and agrees: (x) to the Cure Amount to such Executory Contract / Unexpired Lease set forth in the Assumption Notice or (y) to such other amount that is acceptable to the Debtor, after consultation with the Constituent Parties (the "Proposed Assumption/Assignment").

18. In addition, on or before **October 16, 2024**, the Debtor shall send a supplemental notice (a "Supplemental Assumption Notice") by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email) to the applicable

Page 8 of 34

counterparties to any additional Executory Contracts/Leases not included on the Stalking Horse Executory Contract Assumption Schedule that are proposed to be assumed as of the Bid Deadline by the Stalking Horse Bidder or any other Qualified Bidder.

19. The Supplemental Assumption Notice shall set forth for such applicable counterparties the same information as is required by the Assumption Notice. A Supplemental Assumption Notice shall also be sent to any applicable counterparties to Executory Contracts/Leases identified in any Qualified Bid received by the Debtor where the Cure Amount in that Qualifying Bid (which amount shall be specifically quantified in the Supplemental Assumption Notice) is less than the Cure Amount set forth in the Assumption Notice.

20. The deadline for a non-Debtor party to an Executory Contract / Unexpired Lease (a "Contract/Lease Counterparty") to file and serve an objection (a "Cure Amount/Assignment Objection") to (a) the Cure Amount, (b) the Proposed Assumption/Assignment of such Executory Contract / Unexpired Lease in an Assumption Notice or Supplemental Assumption Notice, or (c) the adequate assurance of future performance of the Prevailing Bidder and/or Back-Up Bidder, shall be **12:00 p.m. prevailing Central time**, on **October 21, 2024** (the "Cure Amount/Assignment Objection Deadline"). Parties to Executory Contracts/Leases may request proof of adequate assurance of future performance by Qualified Bidders by written request to the Debtor's counsel after the Bid Deadline.

21. Cure Amount/Assignment Objections must be both: (a) filed with the Court Clerk and (b) served upon all Notice Parties on or before the Cure Amount/Assignment Objection Deadline. For avoidance of doubt, service to the Notice Parties through the Court's CM/ECF system shall expressly satisfy the service requirement.

Page 9 of 34

22. Subject to timely and effective service of the Assumption Notice (and if applicable the Supplemental Assumption Notice), then to the extent that a Contract/Lease Counterparty fails to timely file and serve a Cure Amount/Assignment Objection as provided herein, then such Contract/Lease Counterparty:

a. Will be forever barred from objecting to the Cure Amount and from asserting any additional cure amounts with respect to such Executory Contract / Unexpired Lease, and the Debtor, the Prevailing Bidder, and the Back-Up Bidder shall be entitled to rely solely upon the Cure Amount; and

b. Will be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract / Unexpired Lease, and will be forever barred and estopped from asserting or claiming against the Debtor, the Prevailing Bidder and/or the Back-Up Bidder, or any other assignee of the relevant Executory Contract / Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied in respect of Executory Contract / Unexpired Lease (including relating to the adequacy of assurance of future performance by the Prevailing Bidder and/or the Back-Up Bidder in respect of such Executory Contract / Unexpired Lease).

23. If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with the appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtor is authorized, but not directed, after consultation with the Constituent Parties, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting party to any Executory Contract / Unexpired Lease without further order of the Court (but without prejudice to

Page 10 of 34

the rights of the Stalking Horse Bidder to object to any such action by the Debtor). In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing, the Court will attempt to resolve any such Cure Amount/Assignment Objection at the Sale Hearing. To the extent necessary, the Debtor, after consultation with the Constituent Parties, shall arrange for the Debtor, the Prevailing Bidder, the Back-Up Bidder, or any other party, as the case may be, to escrow all disputed Claimed Cure Amounts pending resolution with the Court.

24. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest by announcement of said adjournment in open court and corresponding entry on the main docket of this Chapter 11 Case identifying the next scheduled date of the continued Sale Hearing (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures).

25. Pursuant to Bankruptcy Rules 2002(a) and 6004, and in lieu of notice of the Sale Motion being served by the Clerk of this Court, the Debtor is hereby ordered and directed to serve copies of this Sale Procedures Order and its exhibits by regular United States mail within five (5) business days after entry of this Sale Procedures Order to the last known business address of the following parties, if such parties are not represented by counsel who has filed an appearance in this Chapter 11 Case: (a) counsel for each of the Constituent Parties; (b) all known parties to the Debtor's executory contracts and unexpired leases; (c) the United States Trustee's Office for Region 11; (d) all entities reasonably known by the Debtor (or its representatives and retained professionals) to have asserted a lien or security interest in the Sale Assets; (e) the District Director of the Internal Revenue Service for the Northern District of Illinois; (f) the Office of the Attorney

Page 11 of 34

General of Illinois; (g) all parties entitled to notice with the Court's ECF noticing system; and (h) all other entities that have filed requests for notices pursuant to Fed. R. Bankr. P. 2002. Additionally, in lieu of notice of the Sale Motion being served by the Clerk of this Court, the Debtor is hereby ordered and directed to serve copies of the Summary Notice of Sale via first-class U.S. mail (unless mail to such person or entity has previously been returned as undeliverable) upon all entities (a) who are listed on the Schedules D, E, and F of the Debtor's filed schedules, (b) who have filed proofs of claim in the case, or (c) who are otherwise listed on the Debtor's matrix of interested parties filed with the Debtor's chapter 11 petition. Notice provided in accordance with this Order is hereby found to be adequate and sufficient notice of the relief sought in the Sale Motion, including the sale of the Sale Assets and the assumption and assignment of Executory Contracts/Leases.

26. Any interested party may obtain a copy of the Stalking Horse APA, the Form APA, the Sale Motion, any exhibits attached thereto, and/or any proposed Sale Approval Order upon written request directed to counsel for the Debtor, Robbins DiMonte, Ltd., Attn: Steven R. Jakubowski and Carolina Y. Sales, 180 N. LaSalle St., Suite 3300, Chicago, Illinois 60601 (sjakubowski@robbinsdimonte.com; csales@robbinsdimonte.com).

27. Except as otherwise provided in this Sale Procedures Order and the Approved Bid Procedures, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate, after consultation with the Constituent Parties (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures) to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which

Page 12 of 34

is the next highest or otherwise best proposal; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Approved Bid Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate; provided, however, that no bid shall be rejected solely on the basis that it is a credit bid.

28. The Debtor, after consultation with the Constituent Parties and subject to the terms of this Sale Procedures Order and the Approved Bid Procedures, further reserves all rights to impose, at or prior to the Auction, reasonable additional terms and conditions on the sale of the Sale Assets, to reasonably extend or adjourn any deadlines set forth herein (other than with respect to service of the Assumption Notice and the Supplemental Assumption Notice), and to take any other action with respect to the Auction, the Sale Hearing, or the sale of the Sale Assets which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof (all without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in the Approved Bid Procedures).

29. In the event of any conflict between the terms of this Sale Procedures Order and the Approved Bid Procedures, this Sale Procedures Order will control.

30. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Sale Procedures Order shall be effective immediately upon its entry.

31. The fifteen-page limit under Local Rule 5005-3(D) is excused with respect to the Motion.

32. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Sale Procedures Order.

Page 13 of 34

33. Absent further order of Court, non-public Financial Qualifications disclosed by any Bidder to the Debtor or the Constituent Parties in connection with bids for the Asset Sale may not be: (a) used by the Debtor or the Constituent Parties, their agents, or representatives, for any purpose other than evaluating or comparing bids for the Sale Assets; or (b) disclosed by the Debtor or the Constituent Parties to any party that is not (i) another Constituent Party; (ii) the agent or representative of another Constituent Party; (iii) the Court; (iv) a representative of the Office of the United States Trustee; or (v) a Contract/Lease Counterparty that has requested proof of adequate assurance of future performance under its Executory Contract / Unexpired Lease.

34. The Debtor shall file with the Court a proposed form of Sale Approval Order no later than **October 29, 2024 by 4:00 p.m. Central**.

Dated: September 11, 2024

ENTER:

MLU

HONORABLE DAVID D. CLEARY
UNITED STATES BANKRUPTCY JUDGE

*This order prepared by:*
Steven R. Jakubowski (ARDC #6191960)
Carolina Y. Sales (ARDC #6287277)
Dominic G. Erbacci (ARDC# 6329651)
ROBBINS DIMONTE, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
Tel: 312-782-9000
Fax (312) 456-0191
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com
derbacci@robbinsdimonte.com

*Counsel for Debtor*

Page 14 of 34

# EXHIBIT A

Page 15 of 34

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| | ) | |

## APPROVED BID PROCEDURES

TO: ALL PARTIES IN INTEREST AND POTENTIAL BIDDERS FOR THE ASSETS OF BERKSHIRE INVESTMENTS LLC (D/B/A CHICAGO EXTRUDED METALS COMPANY)

PLEASE TAKE NOTICE that set forth below are the bidding procedures (the "**Approved Bid Procedures**") to be employed with respect to the prospective sale of the business and assets of Berkshire Investments LLC d/b/a Chicago Extruded Metals Company, debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case (the "**Chapter 11 Case**") pending in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"). Upon the motion filed by the Debtor on August 21, 2024 (the "**Sale Motion**"), the Bankruptcy Court authorized a sale process and these Approved Bid Procedures pursuant to an order dated September [__], 2024 [ECF No. [__] (the "**Sale Procedures Order**"). The Debtor intends to seek the entry of the Sale Approval Order (as defined below) to the Qualified Bidder (as defined below) submitting the highest and best offer to purchase the Sale Assets, as determined by the Debtor (after consultation with the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "**Committee**") and the Debtor's senior secured lender, NELI International Incorporated ("**NELI**", and together with the Committee, the "**Constituent Parties**", and singularly, a "**Constituent Party**").

| **Key Sale Dates and Deadlines**[1] | |
|---|---|
| Deadline to Serve Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases | September 18, 2024 |
| Qualified Bids Deadline | October 15, 2024 at 4:00 p.m. |
| Deadline to Serve Supplemental Assumption Notice | October 16, 2024 |
| Cure Amount/Assumption Objection Deadline | October 21, 2024 at 12:00 p.m. |
| Deadline for Qualified Bidders to Supplement Financial Qualifications | October 18, 2024 at 12:00 p.m. |
| Auction | October 22, 2024 at 10:00 a.m. |

[1] All times in prevailing Central time.

Page 16 of 34

| Key Sale Dates and Deadlines[1] | |
|---|---|
| Sale Objection Deadline | October 28, 2024 at 12:00 p.m. |
| Deadline to file proposed form of Sale Approval Order | October 29, 2024 at 4:00 p.m. |
| Sale Hearing | October 30, 2024 at 1:00 p.m. |
| Anticipated Sale Closing Date | November 4, 2024 |
| Deadline to Close Sale | November 22, 2024 |

**(1) Assets to be Sold and Form APA**

The Debtor's business consists of fully integrated brass mill specializing in the milling of standard and engineered brass and bronze alloys in extruded rod, bar, and other profiles, including a variety of low lead brass, leaded brass, naval brass, aluminum bronze, and silicon bronze alloys. The Debtor mills its raw materials from a facility located at 1601 S. 54th Avenue, Cicero, Illinois 60804, which also serves as the Debtor's operational headquarters. The nature and operations of the Debtor's business are described in more detail in the *Declaration of Richard M. Jenkins in Support of Chapter 11 Filing and Motion to Approve Postpetition Credit Facility* [ECF No. 14], the "**Declaration**") (which is also available upon written request to the undersigned counsel to the Debtor).

The Debtor is entertaining bids for (i) a going concern transaction, (ii) a sale of all or substantially all of its assets, and (iii) a sale of such smaller portion of the Debtor's assets as may be subject to a purchase agreement and as may be bid upon at auction. The Debtor may enter into one or more transactions with one or more parties, depending upon the bids received. The assets comprising a going concern and/or sale of substantially all of the Debtor's assets are described in detail in Article 2 (titled "**Purchase and Sale**") in that certain form of *Asset Purchase Agreement* approved by the Bankruptcy Court pursuant to the Sale Procedures Order (the "**Form APA**") [ECF No. 28] (which is also available upon written request to the undersigned counsel to the Debtor). These assets shall be referred to herein as the "**Sale Assets**". The acquisition of the Sale Assets shall be subject to the representations, warranties, covenants and other terms and conditions contained in the Form APA, and except as provided therein, shall be on an "**AS IS, WHERE IS**" basis, with all faults of any kind or nature, including latent or patent defects, and without other representations and warranties, express, implied or statutory, written or oral of any kind, nature, or description.

**(2) Notice of Approved Bid Procedures**

Pursuant to the Sale Procedures Order, the Debtor is serving these Approved Bid Procedures, by first-class mail, upon: (a) counsel for each of the Constituent Parties; (b) all currently known counterparties to the Debtor's executory contracts and unexpired leases (collectively, the "**Executory Contracts / Unexpired Leases**"); (c) the United States Trustee's Office for Region 11; (d) all entities reasonably known by the Debtor (or its representatives and retained professionals) to have an interest in the Sale Assets; (e) the District Director of the Internal Revenue Service for the Northern District of Illinois; (f) the Office of the Attorney General of Illinois; (g) all taxing authorities identified in the creditor matrices filed in the Chapter 11 Cases;

Page 17 of 34

(h) all equity security holders of the Debtor; and (i) all other entities that have filed requests for notices pursuant to Rule 2002 of the Bankruptcy Rules. The Debtor is also serving a *Summary Notice of Sale of All or Substantially All Assets of Debtor*, by first-class mail, upon all known creditors in the Chapter 11 Cases and all other persons or entities listed on the Debtor's filed matrices whose mail has not been returned as undeliverable.

**(3) <u>Confidentiality Agreement</u>**

Bidders for Sale Assets (the "**Bidders**") shall be required to complete and execute a confidentiality agreement in form and substance acceptable to the Debtor (the "**Confidentiality Agreement**").

**(4) <u>Due Diligence</u>**

Upon execution of a Confidentiality Agreement, potential bidders who desire to conduct due diligence on any of the Sale Assets will be granted access to the Debtor's electronic data room (the "**Data Room**") and to additional nonpublic information regarding the Debtor. All due diligence requests must be directed to counsel for the Debtor (Robbins DiMonte, Ltd. Attn: Steve Jakubowski; email: sjakubowski@robbinsdimonte.com). The Debtor will make reasonable efforts to address all reasonable requests for additional information and due diligence access.

The due diligence period shall be open until the Bid Deadline (defined below). After the Bid Deadline, the Debtor shall have no obligation to furnish due diligence information, but may do so in its discretion.

Bidders shall not, directly or indirectly, contact any customer, supplier, or contractual counterparty of the Debtor in respect of matters relating to the Debtor or a potential transaction with the Debtor (or otherwise initiate, participate in, or engage in such discussions with such parties) without the prior written consent of the Debtor.

By submitting a bid, each Bidder shall be irrevocably and conclusively deemed to acknowledge and represent that: (a) it has had the opportunity to conduct its due diligence on the Debtor and the Sale Assets prior to making its bid; (b) other than the representations, warranties and covenants in the Form APA, it has relied solely upon its own independent review, investigation, and/or inspection of any documents and information as to the Debtor and the Sale Assets in making its bid; (c) it has completed all due diligence it deems reasonable and necessary under the circumstances; and (d) it waives the right to conduct further due diligence from and after the Bid Deadline. For clarity, the deadline for conducting due diligence shall be the Bid Deadline.

The Debtor will market the Sale Assets, in consultation with the Constituent Parties, to potential buyers including those identified on a prospective purchaser list maintained by the Debtor. The Debtor will routinely update its prospective purchaser list based on contacts and discussions with prospective purchasers. The Debtor will provide regular updates to the Constituent Parties and provide all reasonable information requested by the Constituent Parties in connection with the sale and marketing process including, without limitation, the prospective

Page 18 of 34

purchaser list, marketing and solicitation materials, and copies of non-disclosure agreements executed by prospective purchasers.

The Committee and its members shall also have the right to contact potential buyers for the Sale Assets, including sharing marketing materials prepared by the Debtor and provided to the Committee; notwithstanding the foregoing, the Committee and its members will not share any non-public information with potential buyers. The Committee will provide regular updates to the Debtor and provide all reasonable information requested by the Debtor in connection with any of the Committee's efforts including, without limitation, any prospective purchaser list as updated by the Committee. The Committee will coordinate with the Debtor to avoid any duplication of efforts.

**(5) <u>Criteria for Consideration to be Deemed a Qualified Bid</u>**

Only those bids that are in material compliance with these Approved Bid Procedures (each a "**Qualified Bid**," and each Bidder submitting a Qualified Bid, a "**Qualified Bidder**"), as determined in the Debtor's reasonable discretion in consultation with the Constituent Parties, will be eligible to participate in the Auction. To be considered a Qualified Bid, a bid must comply with all of the following provisions of this section:

(a) The bid must be delivered, in writing, via physical delivery or via e-mail, to Steve Jakubowski and Carol Sales, 180 N. LaSalle St., Suite 330, Chicago, IL 60601, email: sjakubowski@robbinsdimonte.com and csales@robbinsdimonte.com, such that the bid is actually received by them no later than 4:00 p.m. (prevailing Central time) on October 15, 2024 (the "**Bid Deadline**"). Bids received after the Bid Deadline may be precluded or considered to be Qualified Bids in the reasonable discretion of the Debtor (after consultation with the Constituent Parties), but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow process and deadlines set forth in these Approved Bid Procedures). No later than 4:00 p.m. (prevailing Central time) on the next calendar day after the Bid Deadline, but sooner if practicable, counsel for the Debtor shall (i) circulate any bid received to the Constituent Parties, and (ii) confirm receipt of such bid to the applicable Bidder. Any Bidder submitting a bid shall be solely responsible for meeting the Bid Deadline and verifying that its bid was actually and timely received.

(b) The bid must include: (i) an executed Asset Purchase Agreement ("**APA**") in substantially the same form as the Form APA; and (ii) a redlined version of the APA marked to show changes to the Form APA.

(c) The bid must include an earnest money deposit (the "**Deposit**") equal to $325,000.00 in immediately available U.S. funds if it is a bid for all or substantially all of the Sale Assets, or 5% of the proposed purchase price if it is a bid for less than all of the Sale Assets . Prior to the Bid Deadline, the Deposit is to be tendered via wire transfer to United Escrow Co., Inc., 3440 Wilshire Blvd., Suite 600, Los Angeles, California 90010, or such other depository account as designated by the Debtor, at the instruction to be provided by the Debtor. The Deposit shall bear interest (which shall be deemed earned by the Debtor) and shall be conclusively deemed subject to the exclusive jurisdiction of the

Page 19 of 34

Bankruptcy Court upon receipt. Such Deposit shall be applied to the cash purchase price for a Bidder who submits the Prevailing Bid (including Back-Up Bidder, as defined below, that are required to consummate the transaction contemplated hereunder with the Debtor). In the event of the Prevailing Bidder's Failure to Close (as defined below), or the failure of the Back-Up Bidder to close as required under these Approved Bid Procedures, any such bidder shall forfeit the Deposit.

(d) The bid must be accompanied by information about the Bidder's financial qualifications and its ability to consummate its bid and provide adequate assurance of future performance under assumed Executory Contracts / Leases. Such information shall include such Bidder's current financial statements (audited if they exist) and two years' prior tax returns (or other similar financial information acceptable to the Debtor) (the "**Bidder's Financial Qualifications**"). To the extent reasonably requested by the Debtor, each Bidder may be required to supplement or explain the Bidder's Financial Qualifications no later than two (2) business days prior to the Auction upon written request by the Debtor to facilitate the Debtor's evaluation of such Bidder's ability to close on the sale contemplated hereby. The Bidder's Financial Qualifications, any supplemental information related thereto, and any explanation thereof, may be disclosed to the Debtor's agents and the Constituent Parties, subject to the confidentiality provisions of the Sale Procedures Order. At the reasonable discretion of the Debtor, any Qualified Bidder making a Qualified Bid may be required to further supplement the Bidder's Financial Qualifications in order to be permitted to increase its Qualified Bid at the Auction. Failure of the Qualified Bidder to supplement the Bidder's Financial Qualifications, in the discretion of the Debtor in consultation with the Constituent Parties, may result in such Qualified Bidder being precluded from increasing the amount of its Qualified Bid at the Auction.

(e) Each bid must include a written commitment by the Bidder to serve as a Back-Up Bidder in the event that such Bidder's bid is not selected as the Prevailing Bid but is the next highest or otherwise best bid.

(f) The bid must, unless otherwise determined by the Debtor:

(i) remain irrevocable until the docketing entry of the Sale Approval Order;

(ii) if approved at the Sale Hearing as either the Prevailing Bid or the Back-Up Bid, remain irrevocable until the earliest of: (A) the Prevailing Bid Closing (as defined below); (B) fourteen (14) days following the entry of the Sale Approval Order (as defined below) in the case of the Prevailing Bid; and (C) in the case of the Back-Up Bid, the earlier of November 22, 2024 and receipt of the Declination Notice (as defined below);

(iii) clearly state that all consideration to be paid shall be cash and if applicable, any assumed liabilities;

Page 20 of 34

(iv) not contain any financing contingency, regulatory contingency, release of liability contingency, indemnification contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents;

(v) identify each and every of the Executory Contracts / Unexpired Leases, the assumption and assignment of which the Bidder requires as a condition to closing, and provide evidence of the Bidder's ability to comply with Section 365 of the Bankruptcy Code with respect to such Executory Contracts / Unexpired Leases, including, but not limited to adequate assurance that the Bidder can perform under the Executory Contracts / Unexpired Leases. Each Qualified Bidder shall be required to cooperate with Debtor in facilitating Debtor's compliance with Section 365 of the Bankruptcy Code;

(vi) if a bid for all or substantially all of the Sale Assets, be equal to or greater than the following: (i) cash in the amount of $1,752,339.50, *plus* (ii) cash in an amount equal to the sum of (x) the obligations owed to NELI under that certain Secured Super Priority Post-Petition Credit Agreement (as the same may be amended and modified, the "**Post-Petition Credit Agreement**") dated August 12, 2024 by and between Debtor and NELI, *plus* (y) the Pre-Petition Obligations (as defined in the Post-Petition Credit Agreement), *plus* (iii) cash in the amount of the Cure Costs associated with the proposed assumption and assignment of the Executory Contracts / Unexpired Leases, *plus* (iv) the amount of at least $100,000 cash for the benefit of the bankruptcy estate, *plus* cash in the amount of $225,000 for the Break-Up Fee (defined below), *plus* (v) cash in the amount of the $100,000 Expense Reimbursement (defined below) allowance, *plus* (vi) cash in the amount of the $150,000 required overbid.[2] Qualified Bids in an amount less than the Stalking Horse Bid (defined below) may be submitted if when aggregated with another Qualified Bid, the combined Qualified Bids aggregate to a bid which is higher and better than the Stalking Horse Bid; and provided further that the Debtor shall be under no obligation to proceed with such Qualified Bid whether individually or in the aggregate;

(vii) if a bid for less than all or substantially all of the Sale Assets, be equal to or greater than: (i) cash in the amount of the consideration proposed to be paid for the specifically identified Sale Asset(s) in the bid; (ii) cash in the amount of the Cure Costs associated with the proposed assumption and assignment of any Executory Contracts / Unexpired Leases, *plus* (iii) the amount of at least $100,000 cash for the benefit of the bankruptcy estate, *plus* cash in the amount of $225,000 for the Break-Up Fee (defined below), *plus* (iv) cash in the amount of the $100,000 Expense Reimbursement (defined below) allowance, *plus* (v) cash in the amount of the $150,000 required overbid; and

---

[2] The Debtor estimates that the aggregate value of any such bid as of the anticipated closing date is approximately $7,917,782.95 based on the assumptions set forth in Schedule 2.06 in the Stalking Horse APA plus the $225,000 in Break-Up Fee, $100,000 Expense Reimbursement, and the $150,000 required overbid.

Page 21 of 34

(viii) not request or entitle the Bidder to any termination or break-up fee, expense reimbursement, or similar type of payment, with the sole exception of the Stalking Horse APA (as defined below).

(g) The bid must disclose (i) the identity of the Bidder and each entity participating in connection with such bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtor, on the other hand (the "**Insider Disclosure**").

(h) Any Bidder seeking to make a Qualified Bid pursuant to rights provided under Section 363(k) of the Bankruptcy Code, must clearly indicate the amount of such bid which may constitute its credit bid.

**<u>The Debtor reserves the right to communicate with any Bidder to facilitate the curing of any deficiencies in a bid that is not initially deemed to be a Qualified Bid.</u>**

**(6) <u>Stalking Horse Bid</u>**

Pursuant to the Sale Procedures Order, the Debtor has received an offer from X-Metals Acquisition LLC (the "**Stalking Horse**") pursuant to that certain Asset Purchase Agreement dated August 20, 2024 and attached to the Sale Procedures Order (the "**Stalking Horse APA**"). The projected purchase price for the Sale Assets in the Stalking Horse APA is comprised of the following:

(i) cash in an amount equal to the sum of (x) the obligations owed to NELI under the Post-Petition Credit Agreement, plus (y) the Pre-Petition Obligations (as defined in the Post-Petition Credit Agreement) ; *plus*

(ii) a credit bid in the amount of $1,752,339.50 for outstanding indebtedness under that certain "Security Agreement and UCC Filing Authorization," dated February 28, 2024, by and among Debtor, Tramec, L.L.C., and Tramec Sloan LLC (the "**Tramec Security Agreement**"); *plus*

(iii) cash in the amount of Cure Costs for the unexpired Real Property Lease and other Executory Contracts / Unexpired Leases to be assumed by the Stalking Horse in the Stalking Horse's sole discretion; *plus*

(iv) the amount of up to $100,000.00 cash for the benefit of the Debtor's bankruptcy estate.

The sum total of subsections (i) through (iv) of this Section 6 are hereinafter referred to as the "**Stalking Horse Bid**."

Page 22 of 34

The Stalking Horse APA also provides for Bid Protections (defined below), such that any bid seeking to compete with the Stalking Horse Bid for the Sale Assets must exceed the Stalking Horse Bid by: (a) an amount of $150,000.00 (the "**Initial Overbid Amount**"); (b) a termination fee of $225,000 (the "**Break-Up Fee**"), and (c) an expense reimbursement allowance of up to $100,000.00 (the "**Expense Reimbursement**"). The sum of the Initial Overbid Amount, the Break-Up Fee, and the Expense Reimbursement shall be deemed the "**Bid Protections**."

The Stalking Horse shall be entitled to payment of the Break-Up Fee and Expense Reimbursement:

(a) If the Stalking Horse is declared to be the Back-Up Bidder, and there is a Prevailing Bidder Closing, in which case, the Break-Up Fee and Expense Reimbursement shall be paid to the Stalking Horse at the Prevailing Bidder Closing, provided however, that in order to be entitled to the Break-Up Fee and Expense Reimbursement:

(i) the Stalking Horse must otherwise not be in default under any of its obligations under the Staking Horse APA (including as may be modified in writing at or before the Auction); and

(ii) The Stalking Horse must otherwise have been ready, willing, and able to close on the Stalking Horse APA (including as modified in writing at or before the Auction).

The Break-Up Fee and Expense Reimbursement shall be paid out of the proceeds of a sale of any higher or otherwise better bids and shall constitute an administrative-expense claim against the Debtor's estate if for any reason the Closing does not occur. The Break-Up Fee and Expense Reimbursement shall be payable by, and an obligation of, any credit bidder who is deemed the Prevailing Bidder or the Back-Up Bidder, and such credit bidder closes on its bid.

**(7) <u>Auction and Selection of Prevailing Bid and Back-up Bid</u>**

An open-outcry auction sale of the Sale Assets in accordance with these Approved Bid Procedures (the "**Auction**") will be held at 10:00 a.m. (Central time) on October 22, 2024, at the offices of Robbins DiMonte, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, Illinois 60601, or at such later time or other place as the Debtor shall advise all Qualified Bidders (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow process and deadlines set forth in these Approved Bid Procedures). The Auction shall be conducted in the presence of a certified court reporter, who shall transcribe the proceedings for purposes of creating and preserving a record of the Auction.

For a Qualified Bidder to participate in the Auction, the Qualified Bidder must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor and its counsel which may include participation via videoconference (*i.e.* Zoom, Microsoft Teams, etc.). If multiple Qualified Bids are received, each

Page 23 of 34

Bidder shall have the right to continue to improve its Qualified Bid at the Auction, provided however, that the Debtor shall not be obligated to consider any increases to a Qualified Bid which are inconsistent with the Bidder's Financial Qualifications and the Bidder's ability to consummate the transaction contemplated hereby.

Any Qualified Bidder shall be required to confirm on the record at the Auction that it has not engaged in any collusion or other conduct having a chilling effect on the sale with respect to the Approved Bid Procedures, the Sale Assets, or the Auction.

Any Qualified Bidder shall be required to ratify its Insider Disclosure on the record at the Auction.

Bidding will commence with the announcement of the opening bid and will proceed with open out-cry, subsequent overbids in an amount equal to Fifty Thousand Dollars ($50,000.00). When bidding at the Auction, the Stalking Horse shall receive a cash credit in the amount of the Break-Up Fee and Expense Reimbursement and shall be allowed to bid the Break-Up Fee and Expense Reimbursement.

The prevailing bid at the Auction shall be the bid determined by the Debtor, in consultation with the Constituent Parties, to be the highest and best offer for the Sale Assets (the "**Prevailing Bid**"), with the Qualified Bidder submitting such Prevailing Bid being deemed the "**Prevailing Bidder**." Additionally, the Debtor may (but is not required to) determine the second-highest-and-best offer for the Sale Assets (the "**Back-Up Bid**"), with the Qualified Bidder submitting such Back-Up Bid being deemed the "**Back-Up Bidder.**" At the Debtor's option, in consultation with the Constituent Parties, the Debtor may accept the Back-Up Bid in lieu of the Prevailing Bid if the Prevailing Bid does not close on the designated closing date.

The Debtor reserves the right to work with: (a) potential bidders to aggregate two or more bids into a single consolidated bid following the Bid Deadline and/or (b) Qualified Bidders to aggregate two or more Qualified Bids into one or more transaction which collectively constitute a higher or otherwise better bid than the Stalking Horse Bid after considering the Bid Protections prior to the conclusion of the Auction.

If no other Qualified Bid is received by the Bid Deadline, then the Debtor shall cancel the Auction, and the Debtor shall at the Sale Hearing, request: (a) that the Stalking Horse Bid be deemed the highest and best offer for the Sale Assets, and be deemed the Prevailing Bid; (b) authority to consummate the Stalking Horse APA; and (c) entry of the Sale Approval Order.

**(8) <u>Sale Hearing</u>**

Any Qualified Bids that are accepted by the Debtor at the Auction as the Prevailing Bid and the Back-Up Bid will be subject to approval by the Bankruptcy Court. Please be advised that the hearing to approve such bids will be held before the Honorable David D. Cleary, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 644, Chicago, Illinois 60604 (the "**Sale Hearing**") at 1:00 p.m. (Central time) on October 30, 2024, or such later time and place

Page 24 of 34

as the Debtor shall notify all Qualified Bidders, without prejudice to the rights of the Stalking Horse to object to such change of time or place.

At the Sale Hearing, the Debtor shall request entry of one or more Orders (collectively, the "**Sale Approval Order**") approving the consummation of the sale contemplated hereby, in form and substance acceptable to the Debtor, the Committee, NELI, the Prevailing Bidder, and the Back-Up Bidder, or as otherwise ordered by the Court in the absence of agreement by the each of the foregoing.

**(9) Return of Deposits**

Except as otherwise set forth herein, as soon as practicable (but in no event later than five (5) business days) following entry on the docket of the Sale Approval Order, the Debtor shall return to each unsuccessful Qualified Bidder (other than the Prevailing Bidder and the Back-Up Bidder) the Deposit submitted by such Qualified Bidder.

Upon the completion of the Prevailing Bid Closing or the submission of a Declination Notice to the Back-Up Bidder, the Debtor shall return to the Back-Up Bidder the Deposit submitted by the Back-Up Bidder.

**(10) Closing**

Upon entry on the docket of the Sale Approval Order, the Prevailing Bidder and the Debtor shall consummate the Court-approved transaction on the latest of (i) November 4, 2024, (ii) five (5) calendar days after entry on the docket of the Sale Approval Order, and (iii) such other date as agreed between the Prevailing Bidder and Debtor but in no event beyond November 22, 2024 (the "**Prevailing Bid Closing**").

At the Prevailing Bid Closing, the Deposit of the Prevailing Bidder will be applied against the purchase price to be paid by the Prevailing Bidder.

**(11) Failure of Prevailing Bidder to Close**

If the Prevailing Bidder fails to close on or before the Prevailing Bid Closing and the Debtor is not in default of its obligations under the Stalking Horse APA or the Form APA, as applicable, and is otherwise able to consummate the sale (a "**Prevailing Bidder's Failure to Close**"), the Deposit of the Prevailing Bidder, shall be conclusively and irrevocably forfeited to, and become property of, the Debtor.

In the event of a Prevailing Bidder's Failure to Close, the Back-Up Bidder shall be required to consummate the transactions contemplated in the Back-Up Bid at the purchase price so offered without further act, deed, or order of the Bankruptcy Court within five (5) business days following receipt of a notice from the Debtor of a Prevailing Bidder's Failure to Close, unless the Debtor provides written notice to the Back-Up Bidder of its intent not to accept the Back-Up Bid (a "**Declination Notice**"). In the event of a closing of the transaction under the Back-Up Bid, the Deposit of the Back-Up Bidder shall be applied against the purchase price to be paid by the Back-

Page 25 of 34

Up Bidder. If, in the event of a Prevailing Bidder's Failure to Close, and absent a Declination Notice, the Back-Up Bidder fail to close timely and in accordance with the terms of the Back-Up Bid, the Deposit of the Back-Up Bidder shall be forfeited to, and become property of, the Debtor.

The Back-Up Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earliest of: (A) the Prevailing Bid Closing; (B) fourteen (14) days following the entry on the docket of the Sale Approval Order; and (C) such other date as agreed between Back-Up Bidder and the Debtor, but in no event beyond the earlier of November 22, 2024, and receipt of a Declination Notice.

**(12) <u>Reservation of Rights and Highest and Best Bids</u>**

Except as otherwise provided in the Sale Procedures Order (and without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in these Approved Bid Procedures) the Debtor reserves the right, as it may reasonably determine, in consultation with the Constituent Parties, to be in the best interests of its estate to: (a) determine which Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, and thus, determine the Prevailing Bid and the Back-Up Bid; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of these Approved Bid Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate, provided, however, that no bid shall be rejected solely on the basis that it is a credit bid. Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtor further reserves all rights (but without prejudice to the rights of the Stalking Horse Bidder to object to any such action by the Debtor that does not strictly follow the process and deadlines set forth in these Approved Bid Procedures) to modify or impose, at or prior to the Auction, additional terms and conditions on the sale of the Sale Assets, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Hearing or the sale of the Sale Assets which in its business judgment, are reasonably necessary to preserve the bankruptcy estates or maximize the value thereof. The Debtor may also consider factors other than the purchase price in determining the highest and best bid, including, but not limited to, each Bidder's: financial wherewithal, assumption of the Debtor's liabilities, and ability to close in accordance with these Approved Bid Procedures.

**(13) <u>Miscellaneous</u>**

Nothing contained in these Approved Bid Procedures or in the Sale Procedures Order shall create any rights in any other person or Bidder (including without limitation rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing Bidder or the Back-Up Bidder under the Sale Procedures Order, these Approved Bid Procedures, the Stalking Horse APA, the Form APA, and the Auction.

Except as provided in the Sale Procedures Order and these Approved Bid Procedures, the Bankruptcy Court shall retain authority and jurisdiction to hear and determine all matters arising

Page 26 of 34

from or relating to the implementation of the Sale Procedures Order and any order entered in connection with the Sale Hearing.

Dated: September __, 2024

Page 27 of 34

# EXHIBIT B

Page 28 of 34

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| | ) | |

**SUMMARY NOTICE OF SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTOR**

TO: ALL CREDITORS AND INTERESTED PARTIES

**PLEASE TAKE NOTICE** that the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"), in the above-referenced case (the "Chapter 11 Case") of Berkshire Investments LLC d/b/a Chicago Extruded Metals Company (the "Debtor") has entered an order dated September 11, 2024 [ECF No. __] (the "Sale Procedures Order") granting the Debtor's motion to approve a sale process; schedule a public auction to solicit bids for the sale of all or substantially all of the Debtor's assets; and schedule a final hearing to approve such sale [ECF No. 33] (the "Sale Motion"). The Sale Procedures Order and Sale Motion contemplate that the Debtor will sell all or substantially all of its assets and its business as a going concern (the "Sale Assets"), on an "AS IS, WHERE IS" basis, with all faults of any kind or nature, free and clear of all liens, claims, encumbrances, and interests of any kind or nature.

Among other things, the Sale Procedures Order approved: (a) a Stalking Horse Asset Purchase Agreement filed on the Court's Docket as ECF No. [26] (the "Stalking Horse APA");(b) the form of an asset purchase agreement setting forth the terms under which the Debtor intends to offer the Sale Assets for sale to other bidders to compete with the Stalking Horse APA filed on the Court's Docket as ECF No. [28](the "Form APA"); and (c) certain bidding procedures (the "Approved Bidding Procedures") for the auction and sale of the Sale Assets. The Stalking Horse APA, Form APA, and Approved Bidding Procedures contain detailed descriptions of the Sale Assets, due diligence opportunities, the bidding process, certain bid protection and break-up-fee requirements, reservations of rights, qualifying bidders' participation requirements, the bid deadline, the auction, the sale hearing to approve the sale resulting from the auction, various deadlines related to the foregoing, and related information.

Complete copies of the Sale Procedures Order, Sale Motion, Stalking Horse APA, Form APA, and Approved Bidding Procedures may be obtained by visiting https://ecf.ilnb.uscourts.gov/ or by written request to the Debtor's counsel below. Reasonable requests for additional information may also be obtained from the Debtor's counsel below.

**PLEASE TAKE FURTHER NOTICE** that qualified, competing bids (as more fully described in the Approved Bidding Procedures) must be submitted no later than **4:00 p.m. (Central time)** on **October 15, 2024**, and if qualified, competing bids are submitted by that

Page 29 of 34

deadline, the Debtor will conduct a public auction to offer the Sale Assets for sale at the office of its counsel identified below on **October 22, 2024**, at **10:00 a.m. prevailing Central time**, or at such other place and time as may be announced by the Debtor ("Auction"). All objections to the sale of the Sale Assets must be filed and served, in the manner set forth in the Sale Procedures Order, on or before **12:00 p.m. (Central time)** on **October 28, 2024**. A hearing to approve the highest and best offer(s) received at the Auction, if any, is scheduled for **October 30, 2024**, at **1:00 p.m.** prevailing Central time, in Courtroom 644, 219 Dearborn Street, Chicago, Illinois, before the Honorable David D. Cleary, presiding U.S. Bankruptcy Judge in the Chapter 11 Case, or such later time or other place as the Bankruptcy Court shall direct ("Sale Hearing"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

Dated: September __, 2024

Robbins DiMonte. Ltd.
Steven R. Jakubowski, Esq.
Carolina Y. Sales, Esq.
180 N. LaSalle St., Suite 3300
Chicago, Illinois 60601
312-782-9000
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com

*Counsel to the Debtor*

Page 30 of 34

# EXHIBIT C

Page 31 of 34

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-11552 |
| | ) | |
| Berkshire Investments LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable David D. Cleary |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO THE NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES:

**PLEASE TAKE NOTICE AS FOLLOWS:**

1. **Chapter 11 Case** - On September 11, 2024, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division entered an order (the "Sale Procedures Order")[1] in the above-captioned Chapter 11 case (the "Chapter 11 Case") of Berkshire Investments LLC d/b/a Chicago Extruded Metals Company (the "Debtor") approving, among other things, the process (i) by which the Debtor may assume and assign certain of its executory contracts and unexpired leases (the "Executory Contracts / Unexpired Leases"), and (ii) for fixing the cure amounts related to the Debtor's potential assumption and assignment of the Executory Contracts / Unexpired Leases in connection with the sale of all or substantially all the Debtor's assets and business as a going concern (the "Asset Sale").

2. **Notice of Proposed Assignment and Cure Amount** - Set forth on **Exhibit A** hereto is a list of Executory Contracts / Unexpired Leases that the Debtor may potentially seek to have assumed and assigned to the Prevailing Bidder(s) or Back-Up Bidder(s) at the Sale Hearing. **PARTIES RECEIVING THIS NOTICE COULD HAVE THEIR RIGHTS AFFECTED AND SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES THAT MAY BE LISTED IN EXHIBIT A**, which **Exhibit A** also contains the cure amounts that the Debtor's books and records reflect are necessary to pay to counterparties to assume and assign such Executory Contracts / Unexpired Leases pursuant to section 365 of the Bankruptcy Code (each a "Cure Amount"). The Debtor believes that the payment of each Cure Amount will cure any and all defaults and pecuniary losses under the corresponding Executory Contract / Unexpired Lease. Each Executory Contract / Unexpired Lease may be assumed and assigned to any purchaser of the Debtor's assets who is the Prevailing Bidder or the Back-Up Bidder at the Asset Sale. If the Debtor identifies additional Executory Contracts / Unexpired Leases that might be assumed by the

1 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Sale Procedures Order or Approved Bidding Procedures, as the case may be, copies of which may be obtained as set forth in Paragraph 6 hereof.

Page 32 of 34

Debtor and assigned to the Prevailing Bidder(s) or Back-Up Bidder(s) not set forth in this Notice, the Debtor will promptly send a supplemental notice (a "Supplemental Assumption Notice") to the non-Debtor parties to such additional executory contracts and unexpired leases. In addition, on or before **October 16, 2024**, the Debtor shall send the Supplemental Assumption Notice by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email) to the applicable counterparties to any additional Executory Contracts / Unexpired Leases not included on **Exhibit A** hereto that are proposed to be assumed by the Debtor and assigned to the Stalking Horse Bidder or any other Qualified Bidder. This Supplemental Assumption Notice shall set forth for such applicable counterparties the same information as is required by the Assumption Notice. A Supplemental Assumption Notice shall also be sent to any applicable counterparties to Executory Contracts / Unexpired Leases identified in any Qualified Bid received by the Debtor as of **October 15, 2024**, where the Cure Amount in that Qualifying Bid (which amount shall be specifically quantified in the Supplemental Assumption Notice) is less than the Cure Amount set forth on **Exhibit A** hereto.

3. **Assumption and Cure Objections** - Any objection of a non-Debtor party to an Executory Contract / Unexpired Lease to (a) the Cure Amount set forth in **Exhibit A** to this Notice, or (b) the proposed assumption and assignment of such Executory Contract / Unexpired Lease, or (c) the adequate assurance of future performance by the Prevailing Bidder(s) or the Back-Up Bidder(s) (a "Cure Amount/Assumption Objection") must: (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois, and served upon: (i) counsel to the Debtor, Steven R. Jakubowski and Carolina Y. Sales, of Robbins DiMonte, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, Illinois 60061; (ii) counsel to NELI International Incorporated, Teresa Ruiz Schober of Schober & Schober, P.C., 1611 Nueces Street, Austin, Texas 78701, and William J. Factor, Esq., of Law Office of William J. Factor, Ltd., 105 W. Madison St., Ste., 2300, Chicago, Illinois 60602; (iii) the Office of the United States Trustee for Region 11, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; and (iv) counsel to any Official Committee of Unsecured Creditors, Elizabeth L. Janczak, Smith Gambrell & Russell LLP, 311 S. Wacker Dr. Suite 3000, Chicago, IL 60606, by **12:00 p.m. (Central time) on October 21, 2024** (the "Cure Amount/Assumption Objection Deadline"). For avoidance of doubt, service of a Cure Amount/Assumption Objection to the foregoing persons through the Court's CM/ECF system will expressly satisfy the service requirement..

4. **Assumption and Cure Objection Hearing** - In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing (defined below), the Court will attempt to resolve any such Cure Amount/Assignment Objection at the Sale Hearing to consider approval of the Asset Sale, to be held on **October 30, 2024 at 1:00 p.m. (Central time)** at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Courtroom 644, Chicago, Illinois 60604, or such other time as may be ordered by the Court (the

Page 33 of 34

"Sale Hearing"). To the extent necessary, the Debtor (after consultation with the Constituent Parties) shall arrange for the Debtor, the Prevailing Bidder(s), the Back-Up Bidder(s), or any other party, as the case may be, to escrow all disputed Claimed Cure Amounts pending resolution by the Court. **Please be advised that if you do file an objection, you and/or your attorney will be expected to attend the Sale Hearing, or the Court may grant the relief sought in the Sale Motion over such written objection**. Appearance by Zoom may be permitted in accordance with the Court's local rules and procedures.

5. **If No Cure Amount/Assumption Objection is Timely Filed**. If a Cure Amount/Assumption Objection is not timely filed and served by the Cure Amount/Assumption Objection Deadline with respect to any Executory Contract / Unexpired Lease, then: (a) the Debtor will be authorized, but not directed, to assume and assign such Executory Contract / Unexpired Lease; (b) the Cure Amount set forth in this Notice or the Supplemental Assumption Notice will constitute the final determination of the total Cure Amount required to be paid by the Debtor on such Executory Contract / Unexpired Lease pursuant to 11 U.S.C. § 365 for purposes of the Sale Order; and (c) the non-Debtor party to such Executory Contract / Unexpired Lease will be: (i) forever barred and estopped from objecting to the Cure Amount or seeking any additional cure payments on such Executory Contract / Unexpired Lease, whether from the Debtor, the Prevailing Bidder(s), any Back-Up Bidder(s), or any other assignee; (ii) deemed to have waived any right to terminate such Executory Contract / Unexpired Lease as a result of any default which may have occurred under such Executory Contract / Unexpired Lease prior to the assumption date to the extent such Executory Contract / Unexpired Lease is identified as a Sale Asset and assigned to the Prevailing Bidder(s), Back-Up Bidder(s), or any assignee thereof; (iii) deemed to have agreed that the Sale Procedures Order applies and is enforceable with respect to the assumption and assignment of such Executory Contract / Unexpired Lease; (iv) deemed to have agreed that all defaults under such Executory Contract / Unexpired Lease arising or continuing prior to the assumption and assignment date have been fully cured and satisfied; and (v) deemed to have consented to the assumption, assignment, and transfer of such Executory Contract / Unexpired Lease to the Prevailing Bidder(s), Back-Up Bidder(s) or any assignee thereof on all matters.

6. **Requests for Copies and Information**. Copies of the Sale Motion and exhibits thereto, the Bidding Procedures Order, and/or the proposed Sale Order may be obtained by: (a) accessing the Bankruptcy Court's ECF case docket at https://ecf.ilnb.uscourts.gov/; or (b) written request to the Debtor's counsel, Robbins DiMonte, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, Illinois 60061, Attn: Steve Jakubowski and Carol Sales. Any other inquiries regarding the information provided herein may also be directed to the Debtor's counsel.

7. **Proof of Adequate Assurance**. Parties to Executory Contracts / Unexpired Leases may obtain proof of adequate assurance of future performance by potential purchasers by written request to the Debtor's counsel after the Bid Deadline.

8. **Notice**. This Notice is made expressly subject to the Sale Motion, the Sale Procedures Order, and the Approved Bidding Procedures. To the extent that this Notice is inconsistent with the terms contained in the Sale Procedures Order, the Sale Procedures Order shall control. Notwithstanding the reference to any contract as an "Executory Contract / Unexpired

Page 34 of 34

Lease" in this Notice, the Debtor reserves all of their rights with respect to whether or not any contract is an "executory contract" or "unexpired lease" pursuant to the Bankruptcy Code and the inclusion of any document on **Exhibit A** or on any one or more Supplemental Assumption Notices shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code.

Dated: September [__], 2024

BERKSHIRE INVESTMENTS, LLC,

By: /s/ Steven R. Jakubowski
One of Its Proposed Attorneys

Steven R. Jakubowski (ARDC #6191960)
Carolina Y. Sales (ARDC #6287277)
ROBBINS DIMONTE, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
Tel: 312-782-9000
Fax (312) 456-0191
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com

*Counsel for Debtor*